## SIMEON BENJAMIN, PLAINTIFF IN ERROR, *v.* OLIVER B. HILLARD AND MOSES C. MORDECAI.

Where there was a contract for furnishing a steam engine, the following guaranty was made: "For value received, I hereby guaranty the performance of the within contract, on the part of Hopkins & Leach; and in case of non performance thereof, to refund to Messrs. Hillard & Mordecai all sums of money they may pay or advance thereon, with interest from the time the same is paid."

This contract is not in the alternative, but consists of two terms: one, that the principals shall perform their engagement, not merely by the delivery of some machinery, but of such machinery as the contract includes; the other, that if there be a non-performance, whether excusable or not, the money advanced on the contract shall be secured to the plaintiffs, to the extent to which the principals are liable.

An acquiescence of both parties in the prolongation of the time within which the contract was to be fulfilled, will not operate to discharge the guarantor.

There was no change in the essential-features of the contract, and if the parties choose mutually to accommodate each other, so as better to arrive at their end, the surety cannot complain.

So, where the machinery delivered was imperfect, and the two contracting parties had exchanged receipts, but the imperfection was afterwards discovered, and the recipients of the machinery had to expend money upon it, the guarantor is responsible for it.

The defects in the machinery were latent, and could only be ascertained by its use. The settlement between the parties did not embrace the subject to which the warranty applied, nor contain any release or extinguishment of the covenants concerning it.

The damages to be found should be such as would enable the plaintiffs to supply the deficiency, and the jury were not required to assume the contract price as the full value of such machinery.

THIS case was brought up by writ of error from the Circuit Court of the United States for the southern district of New York.

Hillard & Mordecai, the plaintiffs below, of Wilkesbarre, in Pennsylvania, made a contract with Hopkins & Leach, of Elmira, New York, dated September 11, 1847, under seal. Benjamin guarantied the performance of this contract, as follows:

"For value received, I hereby guaranty the performance of the within contract on the part of Hopkins & Leach; and in case of non-performance thereof, to refund to Messrs. Hillard & Mordecai all sums of money they may pay or advance thereon, with interest from the time the same is paid."

The action was brought upon this guaranty, which resulted in a verdict for the plaintiffs, damages six thousand dollars, and $1,869.15 costs. A motion was made for a nonsuit, which was overruled. The particulars of the case are stated in the opinion of the court.

It was submitted on printed arguments by *Mr. Tracy* and *Mr. Noyes* for the plaintiff in error, and by *Mr. Goddard* for the defendants.

The counsel for the plaintiff in error made the following points:

*Benjamin v. Hillard et al.*

I. The court erred in the construction of the defendant's agreement.

1. It was the contract of a surety, which is to be taken *strictissimi juris*, and is not to be enlarged by a liberal or loose interpretation.

Leggett *v.* Humphreys, 21 Howard, 66, 76.

Miller *v.* Stewart, 9 Wheaton, 681, 703.

Wright *v.* Johnson, 8 Wendell, 512, 516.

2. The motive and design of the writing was to protect the plaintiffs against the loss of the money they were to advance. It therefore guarantied a performance of the contract by a delivery of the articles, and that if they were not delivered the money should be refunded with interest.

3. That it referred to such a performance, or such a non-performance, is evident from the stipulation that provides for a repayment of the entire advances with interest, and not for any partial damages. This suretyship is for such a performance only, and is answerable only for a failure in that respect. Under this agreement, if the articles should be made and accepted, and the business settled by the principals, the surety has no liability.

4. There is nothing in the surety's agreement which binds him to answer for the breach of any warranty which the principals have contracted to make. The sealed agreement binds the manufacturers to warrant the engine capable of driving six run of stones, but the guaranty has no connection with such a prospective warranty. The surety's obligation must be and is definite; he is liable at once, or never; the articles are delivered, or they are not; if delivered, he is clear; if not delivered, he is at once liable to refund the money advanced, but nothing else.

5. The essential idea of having the money refunded in gross, apparent on the face of the paper, shows that it was a total non-performance alone which should charge the surety, and the mention of that sum necessarily excludes all other liability.

6. The surety cannot be supposed to have intended to assume an indefinite future liability for ultimate defects in arti-

cles accepted and used by the plaintiffs, and as to which **the** defendant was wholly ignorant.

7. The interpretation adopted by the charge renders three-fourths of the writing senseless and inoperative. The writing is in five lines, and all below the word "Leach," in the second line, is deprived of all force and effect. This passage is manifestly intended to limit and define the extent of the obligation of the surety, and it performs that office, and no other.

II. The undertaking of the defendant was satisfied by the performance of Hopkins & Leach's contract.

1. The delivery and acceptance of the engine, &c., the giving Hopkins & Leach credit therefor, the settlement of the account, and payment of the balance, and the giving of a receipt in full, were acts of the plaintiffs, determining and proving a performance of the contract. The contract for the engine, boiler, and appurtenances, constituted one item at a set price; and the delivery of the whole completed that part of the contract, and the charging, crediting, and allowing of the same as done, and settling for the price, closed that part of the contract.

2. The receipt which went forth from the plaintiffs was justly relied upon by the defendant as a full discharge of the contract; and he acted upon it in relinquishing valuable securities which he held for his indemnity. The plaintiffs are therefore estopped from denying the performance so evidenced by their receipt.

Broom on Common Law, 841, 842, (91 L. L. O. S.)

3. The defendant being a mere surety, and not a principal in the contract, was ignorant of the transaction, and knew not whether the contract was performed or broken. He was informed and assured of its performance by the receipt, and that became his full voucher for treating the performance as established.

4. The making of the last payment was a determination that the contract was "fully completed;" for it was only to be had "when the contract is fully completed."

5. The case shows that the settlement of the plaintiffs with Hopkins & Leach was made December 18th, 1848; before

the mill was fully tried, which was not done till December 25th, 1848.

Thus the plaintiffs waived the right to test the work by a full trial, and proceeded to a closing of the contract at once. After that, they could not resort to the surety, on the ground of non-performance.

6. The plaintiffs treated this settlement with Hopkins & Leach as a determination of the suretyship. Thus, on the 27th December, 1848, being nine days after the settlement, they gave notice to Hopkins & Leach of the failure of the engine; but they never gave any notice to the defendant till the last of May, 1849. The idea that the defendant owed them any undischarged obligation was an afterthought, occurring five months subsequently to the discovery of the failure of the engine.

III. The defendant's obligations as surety were discharged by the acts and agreements of the plaintiffs and Hopkins & Leach.

1. The time of performance by Hopkins & Leach was enlarged. The contract required them to deliver the articles at Wilkesbarre, by the first navigation of the ensuing spring; which would be in March, 1848. The new agreement, to which the defendant was not a party, gave them till the third rise of water in October, to complete the delivery. Such new agreement was made upon a good consideration, and was valid and binding. It made a permanent and material change in the contract.

The surety thereupon ceased to be liable. The identity of the contract was gone. He was not subject to be made liable thus for a longer period, with increased risks, and larger amounts of interest in case of being charged to refund advances.

Whether the change was for the benefit of the one party or the other, or both, it was, in either case, a change of the contract, and discharged the surety.

Miller *v.* Stewart, 9 Wheaton, 681, 703.

Burge on Suretyship, 203, 206.

Pitman on Pr. and Surety, 208.

*Benjamin* v. *Hillard et al.*

Theobald on Pr. and Surety, 154.

Parsons Mercantile Law, 67.

Brigham *v.* Wentworth, 11 Cushing, 123.

Dickerson *v.* Commissioners, 6 Indiana; 128.

Hunt *v.* Smith, 17 Wendell, 179, 180.

Walwrath *v.* Thompson, 6 Hill, 540; 2 Comst., 185.

McWilliams *v.* Mason, 6 Duer, 276.

Bangs *v.* Strong, 7 Hill, 250.

Samuel *v.* Howarth, 3 Merivale, 272.

Thus, in Miller *v.* Stewart, (above cited,) Judge Story says: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal."

So in Parsons Mercantile Law, (above cited,) "If the liability of the principal be materially varied by the act of the party guarantied, without the consent of the guarantor, the guarantor is discharged."

So in Walwrath *v.* Thompson, (above cited,) it is laid down that the terms of the guaranty must be strictly complied with, or the guarantor will not be bound. If he propose a credit, that particular credit must be given to the principal.

In 3 Merivale, 272, the Lord Chancellor said that an extension of time to the principal discharged the surety, "although such giving of time is manifestly for the benefit of the surety."

So in Brigham *v.* Wentworth, (above cited,) it is held that an agreement by the plaintiff, for a consideration, changing the obligation of the principal, discharges the surety.

The like rule runs through all the authorities above cited.

After the plaintiffs in this action made the new agreement with Hopkins & Leach, in March, 1848, they could maintain no action against Hopkins & Leach for not completing the de-

livery by the first water of the spring. The time of performance was effectually enlarged to June and October. For this extension the plaintiffs paid a consideration—the agreement to add $200 worth of extra work—a consideration of benefit to the plaintiffs and of loss to Hopkins & Leach.

The case thus falls perfectly within the rule, that the contract of the principal being changed, the surety is discharged.

The fact that the time of performance originally contracted for had already arrived, and Hopkins & Leach migh* be deemed in default of performance, makes no difference in the application of the rule. The plaintiffs chose to waive the default and make a new contract. If the plaintiffs had insisted on the default, then Hopkins & Leach would have kept the engine, and the defendant would have been liable only for the advances previously made, being then about $4,000; and he would have been more secure of indemnity, by reason of the engine, so far as built, being still the property of Hopkins & Leach.

2. The plaintiffs did not perform the stipulations of the original contract on their own part.

They did not make the advances at the times set by the contract, nor in money as it required.

The contract provided for the payments as follows: ·

$2,000 on or about December 1st, 1847.

$2,000 on or about February 1st, 1848.

And all the balance when the contract was fully completed.

The plaintiffs waited till December 14th, and then remitted a draft for $2,000. From that time forward they gave acceptances and notes, at various times; thus giving to the principals larger advances, and of other kinds, and at other times, than stipulated for in the contract.

3. The defendant as surety, therefore, is not bound to respond on the guaranty. It is material to the risk or safety of the surety, that the advances be made as specified in the contract to which he is surety; and a change in that respect, although made by the principals, is no less a breach of the contract, and discharges him. An advance made before the time it should be made, or after it, or in a different kind of medi-

um, is equally a departure from the conditions of the surety-ship.

Theobald Pr. and Surety, 154, sec. 183.

1 Starkie N. P. C., 192, Bacon *v.* Chesney.

2 ib., 426, Simmons *v.* Keating.

6 Beavan, 110, (13 L. J. N. S., Ch., 260; Jurist., 38; 4 Beavan, 379; 10 L. J. N. S., Ch., 395; 5 Jur., 164,) Bonsor *v.* Cox.

2 Comstock, 185, Walwrath *v.* Thompson, (6 Hill, 540 S. C.)

4 Barbour, 487, F. and M. Bank, Mich., *v.* Evan.

2 Keen, 638, (7 L. J. N. S., Ch., 90; 2 Jur., 62,) Calvert *v.* London Dock Co.

Burge on Suretyship, 117, 118.

8 Wendell, 512, Wright *v.* Johnson.

17 ib., 179, Hunt *v.* Smith.

Fell's Law of Guaranty, 206, et seq., (2d Am. ed.)

The above authorities fully sustain the principle above stated.

Thus in the above case of Bacon *v.* Chesney, the time of credit was shortened from eighteen months to twelve months, and in Simmons *v.* Keating it was changed from one credit of six months to two credits of three months, and the surety was held discharged.

In Bonsor *v.* Cox, the surety was discharged, because the creditor advanced to the principal cash, instead of a three months' draft stipulated in the contract.

Theobald says, (p. 154, sec. 183,) "If the creditor neglects to perform, or performs defectively, any of the conditions, either express or implied, which are incumbent upon him, or any of the terms which collectively form the consideration, either of the sureties' contract or of the contract to which the surety acceded, the surety is discharged, or, rather, his liability never attaches."

In Walwrath *v.* Thompson, (above cited,) there was a guaranty of credit to January 1st, but the credit was, in fact, given to December 25th, and the surety was held discharged, although the principal was not called on to pay till January 1st.

Judge Bronson says, (p. 542:) "The fact that the credit was abridged only a few days is not important; cutting off a week is as fatal as though it had been a month."

In 4 Barbour, 487, the contract was for a loan of five thousand dollars. The surety was held discharged, because the loan was made for a larger sum than the one specified.

In 17 Wendell, 179, the surety was held not to be liable for two reasons: first, that the credit was given to a larger amount than the one specified in the agreement; and second, that it was given for a longer time. This was a decision by the Supreme Court of the State of New York, when it was composed of Judges Nelson, Bronson, and Cowen.

IV. The court erred in refusing to charge the jury as requested by the defendant's counsel, in relation to the rule of damages.

The engine, boilers, and appurtenances thereof, had a definite price fixed by the contract, viz: $3,150. The parties had set this as the value of such articles, properly made and fully answering to the terms of the contract. In any assessment of damages for a failure to deliver such articles, that price must be taken as the test of value.

Whatever rule of damages might be applied, this element of the price of an engine of the specific dimensions, and sufficient to drive six run of stones, was an essential consideration, and the instruction asked for should have been granted.

Cary *v.* Gruman, 4 Hill, 265.

The price of the article stipulated by the contract is *prima facie* the value of such article when it fully conforms to the agreement.

The jury, being left without such instruction, found a verdict against the plaintiff for nearly twice the contract price of the engine, boilers, and appurtenances, although the plaintiffs retained the property, and it had material value.

V. The court erred in admitting the paper called a survey.

This paper was an unsworn statement, made *ex parte,* and contains allegations of particular facts, and also expressions of opinions of the persons signing it.

It was calculated greatly to affect and mislead a jury, and

ought to have been excluded. It was wholly inadmissible as evidence. The effect of admitting such evidence was to enable the plaintiffs out of court to get up an *ex parte* statement, and then bring it before the jury with the apparent force of regular proof.

The circumstance that the paper had been sent to the defendant made no difference in its admissibility, for it was received in evidence generally, and not for any qualified purpose.

The counsel for the defendant in error made the following points:

The plaintiffs gave evidence to prove that the engine and machinery were not well made; were not put in operation, would not drive six run of stones; that they spent large sums of money to put them in a condition to run, and that they would not then or ever drive six run of stones, and proved the damages sustained; and that when the accounts were balanced, December 18, 1848, the engine had not been tried, or run in connection with the mill.

That notice of the failure of the engine was sent to Hopkins & Leach, December 27, 1848, who again tried to put the engine in operation, and again failed. That notice of such final failure was then sent to defendant, with a copy of a survey upon the engine made by engineers.

I. The first exception in the case was to the admission of this survey.

It was competent evidence to show what notice and information were sent to defendant; and in this light only was it put in evidence.

It being proper evidence for one purpose, and the exception being general to its entire exclusion, it is not well taken..

Cambden *v.* Doremus, 3 How., 515.

It was, however, admissible for all purposes, as the defendant had already introduced evidence as to its contents, as had the plaintiffs also, without objection.

The objections taken on the execution of the commission were not made at the trial.

II. The next exception is to the refusal to nonsuit. cannot be done against the will of the plaintiff.

Elmore *v.* Grymes, 1 Pet. Rep., 469.

De Wolf *v.* Rabaud, 1 Pet. Rep., 476.

Crane *v.* Morris's Lessee, 6 Pet. Rep., 593.

The questions raised on the motion for a nonsuit will not therefore be considered, except such of them as are contained in exceptions to the judge's charge to the jury.

III. The remaining exceptions are to the charge.

1. The construction given to the guaranty is correct.

The last clause of the contract with Hopkins & Leach is, that they would give security for the money and for the fulfilment of this contract. And then on the same paper follows the guaranty, by which the defendant guaranties "the performance of the within contract on the part of Hopkins & Leach." And also agrees to refund the money paid on it, if not performed.

The exception does not indicate with which part of this charge the defendant was dissatisfied. Whether that part of it which relates to the repayment of the money, if the engine, &c., were not delivered at all, or that part which holds defendant responsible, if they were delivered, but not according to contract.

If either portion is correct, the exception is too general.

But the whole is correct.

The defendant guaranties the performance of the contract. That is, he undertakes and binds himself that the contract shall be performed. Not merely that an engine and machinery shall be delivered of certain dimensions, but that they shall be according to the contract. Any other guaranty would have been of no value, and would not have been what the contract entitled the plaintiffs to.

If the contract was not performed, the defendant was liable to such damages as the plaintiffs had legally sustained—as the court afterwards charged—and no more.

2. The charge of the court on the alleged enlargement of the time for completing the contract was correct.

The amount of it is, that such an acquiescence in delay, on

the part of Hopkins & Leach, as was testified to, would not, as matter of law, discharge the defendant. But that a material alteration of the contract by the parties would discharge him.

The evidence as to the alleged enlargement of the time is on page 20—that of Frederick Leach. He says: "We did not get the whole completed by the first run of water in the spring;" and that he wrote Hillard & Mordecai he could have the engine ready "by the next rise of water in June."

He then says that he saw Hillard, and it was agreed he might bring down "the engine and other work and materials in the June rise of water." That is, the residue of it—most of it was brought in the spring.

This was no enlargement of the time, as Leach had already written he could not have them ready till "the next rise of water in June."

And it seems the articles could only be sent when there was a rise of water.

He also says: "It was also agreed that I might have till October to deliver some parts of the work." But what those parts were does not appear. They were not "the engine and other work and materials" that were to come in June; nor "a large majority of the machinery and boiler, and pretty much all the engine," that were taken down in March.

It does not appear that the parts to be sent in October were of any importance in the fulfilment of the contract.

The time for the putting up the engine, &c., was not fixed by the contract. They were to be put up "when the foundations are finished and ready for the reception of the machinery," of which Hopkins & Leach were to have ten days' notice. There was no change in this.

An agreement with the principal for delay does not discharge the surety, unless it is one which the principal can enforce; one which is valid in law; and made on sufficient consideration.

McLemore *v.* Powell, 12 Wheat., 554.

Vilas *v.* Jones, 10 Paige, 79.

The contract was under seal, and could not be varied by parol, so as to be obligatory on the parties to it.

Davey *v.* Prendergrass, 5 Barn. and Ald., 187.

Galm *v.* Niemceuicz, 11 Wend., 312.

3. There was no error in the charge as to the effect of the settlement of the accounts between the plaintiffs and Hopkins & Leach, and the payment of the balance, December 18, 1848. The account which Hopkins & Leach retained, and took to Elmira, is that signed by plaintiffs.

The witness, Leach, testified that he showed this account to the defendant, and required him to give up certain securities.

He also says that his firm of Hopkins & Leach dissolved at that time, and sold out to Leach, Potter, & Covill; and that, to make such sale, they had to settle with Mr. Benjamin, and get up the chattel mortgage; and that they gave Mr. Benjamin the notes of the new firm, in place of those of the old.

He does not state whether the mortgage or the notes were held as security for the guaranty. There was really no evidence that any security held for the guaranty was given up, unless it was the substitution of one security for another.

The witness sought to create an impression that the securities were given up in part, on the faith of the settlement with the plaintiffs, but he does not say so.

The account and settlement, on page 22, was no discharge of Hopkins & Leach on their contract.

The contract was then completed. The engine was delivered and put up, and the other work was delivered, but not all put up, that being no part of the contract of Hopkins & Leach.

The engine had not been tried in connection with the mill. And of course it could not be determined whether it would drive the mill with six or any run of stones, and whether that part of the contract had been performed.

If the defendant's guaranty of the " performance of the contract" extended to the quality and sufficiency of the work when done, then he had no right to assume, if he did, that his liability thereon ceased when the last payment was made to Hopkins & Leach; for that payment might, and in fact did, become due before the mill was complete, and before the engine could be tried.

There was nothing in the memorandum of settlement to mislead l im.

Whether the contract was performed or fulfilled in the sense of the contract, and as guarantied, could only be ascertained at Wilkesbarre. And the defendant was bound to ascertain, before he could act on such assumption, to the prejudice of the plaintiffs.

4. The guaranty was coextensive with the obligations of the contract.

Mr. Justice CAMPBELL delivered the opinion of the court.

In September, 1847, Hillard & Mordecai employed the firm of Hopkins & Leach to make at Elmira, in New York, and deliver to them at Wilkesbarre, Pennsylvania, a steam engine, and apparatus necessary to put the same in complete operation, of the best materials and in the most substantial and workmanlike manner, according to specifications, and warranted to be of sufficient capacity and strength to drive six run of stones, and the gearing and machinery necessary for flouring and gristing purposes. Also, to make and deliver the cast-iron, wrought-iron, steel, and composition work for driving six run of stones, and the machinery attached, of the best materials and workmanship. These they were to erect and put up on a foundation prepared by Hillard & Mordecai, who were to afford the proper aid for that purpose. The machinery was to be completed and delivered at Wilkesbarre upon the first safe and navigable rise in the water of the river (Chemung) in the ensuing spring; and Hopkins & Leach were to give a responsible individual for security for the money paid on the contract; and for its fulfilment, Hillard & Mordecai agreed to pay two thousand dollars the first of December, 1847; two thousand dollars the first of February, 1848; and the remainder upon the completion of the work, for which payments they were to be allowed interest. Before the first payment, the defendant subscribed an agreement, endorsed on the contract, as follows: "For value received, I hereby guaranty the performance of the within contract on the part of Hopkins & Leach; and in case of non-performance thereof,

*Benjamin v. Hillard et al.*

to refund to Messrs. Hillard & Mordecai all sums of money they may pay or advance thereon, with interest from the time the same is paid." This suit was brought on this guaranty by Hillard & Mordecai for the insufficiency of the work done by Hopkins & Leach. On the trial, they adduced testimony to show that the engine and apparatus set up by Hopkins & Leach were not of the best material, nor of substantial and workmanlike construction, and had not strength to drive six run of stones, and in improving them they had sustained expense and loss; that from the middle of December, 1847, till December, 1858, the time when the work was finished, they had advanced fifty-five hundred dollars, and that only a trifling balance existed at that date, which was paid before the work had been tested by use; that afterwards, and in that month, defects were discovered, of which Hopkins & Leach had notice. In consequence of which, they made efforts to improve their work; but in June, 1849, the plaintiffs procured an examination to be made by three machinists and engineers, whose report upon the imperfection of the machinery was communicated to Hopkins & Leach and to the defendant, and who were required to amend their work. This notice and report were read to the jury, the defendant excepting to their competency. The defendant, after the case of the plaintiff was submitted to the jury, insisted to the court that his contract was merely a guaranty, either of the performance of the agreement by Hopkins & Leach by the delivery of the machinery, or the refunding of the moneys that might be paid before that event; and that the advances of the plaintiffs, being in drafts or notes, and not within the time limited by the contract, the defendant was not liable at all, or if liable, only to the extent of the payment of $4,000, until they had fully performed their contract; and the plaintiffs having fully paid off Hopkins & Leach, and receipts being given, the defendant had a right to consider his guaranty as at an end.

The court overruled a motion to nonsuit the plaintiff, and instructed the jury that the defendant was responsible on his contract, not only for the non-payment of the money advanced to Hopkins & Leach in case they failed to make and deliver

the engine and machinery, but also for the full and faithful performance of all of the agreement of Hopkins & Leach. The general rule is, to attribute to the obligation of a surety the same extent as that of the principal. Unless from the terms of the contract an intention appears to reduce his liability within more narrow bounds, a restriction will not be imposed by construction contrary to the nature of the engagement. If the terms of his engagement are general and unrestricted, and embrace the entire subject, (*omnem causam,*) his liability will be measured by that of the principal, and embrace the same accessories and consequences, (*connexorum et dependentium.*) It will be presumed that he had in view the guaranty of the obligations his principal had assumed. Poth. on Ob., 404; 3 M. and S., 502; Boyd *v.* Moyle, 2 C. B., 644.

In the case before us, the contract of the surety is not in the alternative, but consists of two terms: one, that the principals shall perform their engagement, not merely by the delivery of some machinery, but of such machinery as the contract includes; the other, that if there be a non-performance, whether excusable or not, the money advanced on the contract shall be secured to the plaintiffs to the extent for which their principals are liable.

The defendant, to sustain his defence that the plaintiffs had varied their agreement with Hopkins & Leach, adduced testimony to the effect that the latter had informed them of their inability to complete the work " by the first safe and navigable rise in the river," and that they assented to the delay proposed by them till another rise; that a portion of the work was sent in April, and a portion in June, and a portion in October, and that the plaintiffs were not ready to receive it until October, and it was not erected until December, 1848, at which time a settlement took place, and the plaintiffs paid the small balance then due.

The Circuit Court instructed the jury that the waiver by the plaintiffs of the punctual delivery of the engine and machinery did not constitute such a change in the contract as to discharge the guarantor. That a mutual alteration of the contract by the principal parties would operate to discharge the

defendant as a guarantor; but an acquiescence on the part of the plaintiffs in a longer time than was specified in the contract for fulfilment, especially as the time of fulfilment was somewhat indefinite, would not, as matter of law, operate to discharge the defendant; and the court declined to charge the jury "that if they believed that the performance of the contract was essentially altered or varied, or the time of the delivery of the machinery at Wilkesbarre extended upon good consideration, without the knowledge or consent of the defendant, the plaintiffs were not entitled to recover."

The agreement of Hopkins & Leach comprised the manufacture of complicated machinery of distinct parts and different degrees of importance, and these were to be transported to a distance, there to be set up in connection with other works about which other persons were employed. That such a contract should not be fulfilled to the letter by either party is not a matter of surprise. The covenants are independent, and there is nothing that indicates that a failure on either part to perform one of these covenants would authorize its dissolution, or that the breach could not be compensated in damages.

The evidence does not allow us to conclude that there was any intention to change the object or the means essential to attain the object of the original agreement. In its execution, there were departures from its stipulations; but these seem to have been made on grounds of mutual convenience, and did not increase the risk to the surety. He was fully indemnified by his principals until after the settlement between the plaintiffs and Hopkins & Leach.

It is clear that the mere prolongation of the term of payment of the principal debtor, or of the time for the performance of his duty, will not discharge a surety or guarantor. There must be another contract substituted for the original contract, or some alteration in a point so material as in effect to make a new contract, without the surety's consent to produce that result. But when the essential features of the contract and its objects are preserved, and the parties, without objection from the surety, and without any legal constraint on themselves, mutually accommodate each other, so as better to

arrive at their end, we can find no ground for the surety to complain. The Circuit Court presented the question fairly to the jury, and the exceptions to the charge cannot be supported. Trop. de Caution, 575; Beaubien *v.* Stoney, Spear So. Ca. Ch. R.; 508; 11 Wend., 312.

The defendant adduced testimony to show that the plaintiffs accepted the engine and machinery; that an account was stated between the plaintiffs and Hopkins & Leach of the work done and money paid, and an acknowledgment of its settlement entered upon it, and signed by the parties; that Hopkins & Leach exhibited this account to the defendant, and demanded a return of the securities they had deposited with him for his indemnity, and that they were yielded on the credit given to that acknowledgment. He requested the court to instruct the jury, that if they believed that the defendant, relying upon the receipt given by the plaintiffs, settled with Hopkins & Leach, and surrendered to them securities he held to indemnify him against the liability he assumed by his guaranty, and such surrender and discharge were made after the settlement between Hopkins & Leach and the plaintiffs, and upon the faith of it, the plaintiffs are bound by such settlement and receipt, so far as the same relates to the defendant, they having put it in the power of Hopkins & Leach to procure the surrender of such securities for the defendant. This prayer finds its answer in the agreement of Hopkins & Leach, and the guaranty of the defendant.

The material of which the machinery was to be composed, and the workmanship and capacity of the manufacture, were warranted. The defects in the machinery were latent, and could only be ascertained by its use. The settlement between the parties did not embrace the subject to which the warranty applied, nor contain any release or extinguishment of the covenants concerning it. The cause of the present suit is not the same as that included in the stated account, or acknowledgment entered upon it.

The present suit originates in the contract between Hopkins & Leach and the plaintiffs. The former could not plead that settlement in bar of a similar suit against them; and, conse-

quently, their guarantor cannot. They have misconceived the import of that settlement without the agency of the plaintiffs, and are not entitled to charge them with the consequent loss.

The Circuit Court instructed the jury, that if they found the engine, boilers, and apparatus for steam power, were sufficient to drive six run of stones suitable for grinding, the damages to be found should be such as would enable the plaintiffs to supply the deficiency, and that they were not required to assume the contract price as the full value of such machinery.

The principle thus laid down coincides with that in Alder *v.* Keightly, 15 M. and W., 117. "No doubt," say the court in that case, "all questions of damages are, strictly speaking, for the jury; and, however clear and plain may be the rule of law on which the damages are to be found, the act of finding them is for them. But there are certain established rules, according to which they ought to find; and here is a clear rule: that the amount that would have been received, if the contract had been kept, is the measure of damages if the contract is broken." This rule was reaffirmed in Hadley *v.* Baxendale, 10 Exch., 341. The exception to the introduction of the notice to the defendant, and the report accompanying it, cannot be sustained. It was proper for the plaintiffs to notify the principals and their surety of the defects in their work, and to call upon them to amend it. The report was not introduced as testimony of the defects, nor can we assume that it was used for that purpose. Upon the whole record our conclusion is, there is no error, and the judgment of the Circuit Court is affirmed.