DIEDRICH vs. THE NORTHWESTERN UNION RAILWAY COMPANY.

EVIDENCE. *(1) Admissions. (2) Testimony as to depreciation in value of property. (3) Exclusion of immaterial questions. (4) Rebuttal.*
VERDICT. *(5) Presumption that verdict includes interest.*

1. Under the circumstances of this case, *held*, that *the whole* of a certain statement, relied on by the respondent as admitted, must be considered as in evidence, or no part of it.
2. In an action for damages for the taking of part of plaintiff's block in a city for a railway, a witness for plaintiff, who had acted for several years as his agent in looking after the block, had paid taxes, given leases and collected rents thereon, received offers to purchase, and was personally acquainted with the block both before and after the taking, *held*, competent to testify not only to the value of the strip taken, but also to the depreciation in value of the remainder of the block, by reason of the taking for railway purposes.

3. A witness who had testified fully as to the actual value of the whole block both before and after the taking, was asked what a particular front of said block was worth before the road was constructed. *Held*, that there was no error in excluding the question.

4. Plaintiff having proven title to the land to the water's edge, defendant introduced evidence that the land taken was not above the water's edge, but was made beyond it by means of a breakwater and cribs extending into the water. *Held*, that there was no error in permitting plaintiff then to show that the breakwater and cribs were *not* built beyond the water's edge; the evidence being properly in rebuttal.

5. Where the jury, being instructed that plaintiff, if he recovered, was entitled to interest, found his damages at a certain sum, it must be presumed that this included the interest; and a judgment taken for a larger sum, including interest on that named in the verdict, is reversed, with directions to grant a new trial unless plaintiff remit the excess.

APPEAL from the Circuit Court for *Milwaukee* County.

Plaintiff appealed from an appraisal, made by commissioners duly appointed for that purpose, of a strip of land to which he claimed title, and which had been taken by defendant for its railroad track. On appeal from a former judgment of the circuit court herein, that judgment was reversed, and the cause remanded for a new trial. 42 Wis., 248. On the next trial, the evidence as to plaintiff's title, and upon the question whether the strip of land taken by defendant was originally a part of the shore, or was land made by plaintiff in the bed of the lake beyond low-water mark, was somewhat different from that given upon the former trial. The alleged errors in respect to the admission or rejection of evidence, and in other respects, will sufficiently appear from the opinion.

Plaintiff had a verdict and judgment; and defendant appealed from the judgment.

For the appellant, there was a brief by *E. Mariner,* and oral argument by *Mr. Mariner* and *L. S. Dixon.* They contended that it was incumbent on plaintiff to show, as a part of his case, that the land taken by defendant was within the limits of the tract included in his paper title; that if, after showing title to low-water mark, plaintiff might in the first

instance rest upon a *presumption* that all the land now found above the water was included in his title, it was sufficient for defendant in the first instance to produce sufficient evidence of the land having in fact been made in the lake by plaintiff, to overcome that presumption; that the court might then, as a matter of discretion but *not of right*, permit plaintiff to introduce further evidence to make out his case by showing that the land in dispute was originally above the water; and that thereupon it was error to refuse defendant's offer of further rebutting evidence — an error by which defendant probably lost the case. Counsel also argued the other objections noticed in the opinion.

For the respondent, there was a brief by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *Mr. Cotzhausen*.

Cole, J. 1. The first point relied on for a reversal of the judgment relates to the question of title. It is insisted on the part of the company, that in this proceeding to obtain compensation the plaintiff was bound to prove title to the particular strip of land taken, to be in himself; in other words, he must connect his paper title with the premises described in the award, or he could not recover. As the foundation of his title, the plaintiff put in evidence a patent from the United States to Morgan L. Martin of lot No. 2, bearing date December 27, 1842, under which he derived title through several mesne conveyances. Thereupon the plaintiff's counsel stated that it was admitted by counsel (referring to an admission on the former trial) that fractional lot No. 2 was entered August 1, 1835, by Peter Juneau, with duplicate certificate No. 16, and that he, before the making of the plat, assigned the certificate to Morgan L. Martin; that this entry was cancelled December 16, 1841; that on April 5, 1842, the lot was entered by William Powell with duplicate certificate No. 9399; that on the 21st of April, 1842, Powell assigned the certificate to Morgan L. Martin; and that Morgan L. Martin conveyed an

undivided half of the lot to Solomon Juneau November 28, 1835.

To this statement, the counsel for the defendant said: "We will admit the entry August 1, 1835, by Peter Juneau, and the assignment of the certificate to Morgan L. Martin, and the conveyance of an undivided half by Martin to Solomon Juneau, November 28, 1835. I will admit what the facts are, and with regard to the other I will ascertain between now and to-morrow morning." The plaintiff's counsel then said: "You also admit the subsequent entry of Powell with duplicate certificate." To which the defendant's counsel replied: "That is a thing I don't know about," and here the matter rested.

The plaintiff further offered the assignment of the certificate by Powell to Martin, which was admitted in evidence, against the defendant's objection. Now it is said the court erred in admitting in evidence the certificate of entry by Powell, because it appeared that the United States had previously sold the land by Juneau's entry, which *prima facie* carried the title; consequently the subsequent entry, though followed by a patent, was void under the decision in *Wirth v. Branson*, 98 U. S., 118.

The former entry by Juneau appeared to be in evidence only from what was stated by plaintiff's counsel to be admitted on the other side. And in respect to that statement by way of admission, the whole of it must be either considered in evidence or no part of it; for, considering the manner the whole matter was dropped or disposed of on the trial, it would be a most unfair advantage to allow the defendant to have the benefit of the statement so far as it makes in his favor, but to reject whatever makes against him. The entire statement must be treated as being either in or entirely out of the case; and it is immaterial which view is taken of it, for the result will be the same. If the whole statement is regarded as an admission in the cause, then it plainly appears that

Juneau's entry was vacated and cancelled before Powell's was made. In that case the patent would be regular, and show title to the lot in Martin. On the other hand, if the statement or admission is deemed out of the case, then there is nothing to show that Powell's was not the only entry. Under the circumstances we have less reluctance in adopting this view, because on the former trial and hearing it was practically conceded that the plaintiff's title extended to the water's edge, and the decision as to riparian rights was based upon that assumption. 42 Wis., 248. The proof in the present case was sufficient to show title to the premises to be in the plaintiff.

2. The next error assigned relates to the admission, against defendant's objection, of certain questions asked the witness Ferdinand Kuehn. The witness had testified to the value of the block in controversy, both before and after the strip was taken by the company for the use of its road. The witness was asked and permitted to state, against the defendant's objection, whether the balance of the block, not taken by defendant, was increased or diminished in value by reason of the strip taken being used for the purpose of operating a railway. He answered that it was materially depreciated, stating the value of the block before the road was built and after. This question was then asked: "After that strip is taken out of that property, how much, in your judgment, is the balance of the property depreciated in value by reason of the strip being operated for the use of the railway, not by reason of the taking out of the strip, because that we have got already, but for the uses of the railway; how much does that depreciate the market value of the property?"

This question was objected to, on the ground that it had not been proven that the witness had such knowledge of the effect of operating a railway as would enable him to testify of the effect upon the value of the same.

We do not think this question so seriously objectionable that

Diedrich vs. The Northwestern Union Railway Co.

it should work a reversal of the judgment. As we understand the case, the testimony of Mr. Kuehn, as given on the former trial, was read on this trial by stipulation. Upon examining his evidence, it will be seen that he testified that he had acted for several years as the agent of the plaintiff in looking after this property. He had paid the taxes, given leases, collected rents, received offers to purchase, and was personally well acquainted with the block, both before and after the strip was taken by the company. He certainly had the most ample means to form an intelligent opinion, derived from an adequate knowledge of the situation and value of the property, to render him competent to answer the question, and came within the rule recognized or approved in *Whitman v. Boston & Maine Railroad*, 7 Allen, 313; *Whitney v. City of Boston*, 98 Mass., 312; *Boston & Maine Railroad v. Montgomery*, 119 Mass., 114.

In *Buffum v. N. Y. & Boston Railroad Co.*, 4 R. I., 121, the rule which was laid down by the trial court, and disapproved by the supreme court, was to the effect that any one living in the village where the land was situated at the time of the location of the road, and acquainted with the land, was competent to give an opinion as to the value of the land taken by the company, and as to the damage done by such location to the land of the claimant. It is unnecessary here to dissent from the doctrine of the Rhode Island case in order to sustain the admissibility of the testimony of Mr. Kuehn. He surely possessed the requisite qualification, and had sufficient knowledge on the subject, to answer the question. Evidence of this character is admitted from necessity; and there is no substantial objection to it where the witness shows that he is sufficiently informed to speak understandingly on the matter upon which he is called to testify. See *The M. & M. Railroad Co. v. Eble*, 3 Pin., 334; *Snyder v. The Western Union R. R. Co.*, 25 Wis., 60.

3. The next error assigned is, that the court improperly

excluded certain questions asked the witness Winfield Smith.
We do not think there was any error in the rulings of the
court on this point. This witness was allowed to state fully,
upon his examination, what, in his judgment, the strip taken
by the company was worth, and what effect the taking of such
strip for railroad purposes would have upon the value of the
rest of the property.

It seems to us the witness was permitted to give his opin-
ion upon every point connected with the issue, and surely he
stated it fully as to the actual value of the property before and
after the location of the road. The question asked him and
excluded, as to what the Wisconsin street front of the prop-
erty was worth before the railroad was constructed, was one
which he must have necessarily considered and answered in
giving his opinion in respect to the value of the property, as
well before as after the taking. This element would enter
into his estimate on that question.

4. The next error assigned is in allowing the witness Buck
to testify whether the breakwater was constructed and the
cribs built beyond the water's edge, or within it on the beach.
This witness and others were examined by the plaintiff after
the defense was closed. Testimony had been introduced on
the part of the defense tending to prove that the plaintiff,
in building the breakwater and cribs, had extended them be-
yond low-water mark, down into the lake. To meet this evi-
dence, the plaintiff sought to show by this witness and others
that this was not the fact; that those structures, when erected,
did not extend beyond the water's edge, but were built upon
the shore proper. In our view this was strictly rebutting
testimony, and there was no error in admitting it.

The plaintiff, in his opening, had proven title to the land
down to the natural shore of the lake, and his damages. He
was not required to anticipate, in the first instance, the de-
fense, and prove that he had not extended his embankment
into the water. But when the defendant attempted to show

that he had thus extended it, and that the premises sought to be condemned were really in the lake, the plaintiff had an undoubted right to meet and overcome that evidence if he could. A bare statement of the point is sufficient to vindicate the correctness of the ruling of the court below in admitting the evidence.

5. This brings us to a consideration of the verdict and judgment upon which a point is made. The court submitted four questions to the jury upon which to find specially: *first*, whether the strip of land in question was, in the spring or summer of 1856, a part of the shore of the lake, or whether it was outside of the shore proper and covered by water; *second*, the value of the strip taken, if it was found to be a part of the shore or dry land; *third*, the damage to the remainder of the plaintiff's property, if any, resulting from the taking of the strip for railroad purposes; *fourth*, the total damage to the plaintiff by reason of the taking and using the strip of land for the use of the railroad.

The record recites that the jury, after deliberating upon their verdict, returned into court and said that they had agreed upon their verdict, and submitted the same to the court. The court stated to the jury that the verdict was informal, and did not state the gross amount of plaintiff's damages; that if they allowed interest, it was their duty to calculate it, and not the duty of the court. The jury were then sent back to correct the verdict. Having retired again, the jury came into court with their verdict, finding that the strip was not outside the shore line; that its value was $6,625; that the damages to the remainder of the property was $7,609; and that the plaintiff's total damage, by reason of the taking and using of the strip for the purposes of the road, was $14,234. Upon this verdict a judgment was rendered for the sum of $19,891.22, damages and costs.

It is insisted that this judgment is wholly unwarranted by the verdict; and we think the point well taken. The plaintiff

calculated interest on the total amount of damages from the time of the taking of the land, November 6, 1872, up to the entry of the judgment.  He was undoubtedly entitled by law to interest on the damage he had sustained, and presumably the jury allowed it to him, under the direction of the court, in their finding.  This inference is very strong from the facts stated in the record.  At all events we must assume that the jury obeyed the direction of the court, and allowed the plaintiff interest on the amount of damages which they awarded him.  If they did, then plainly the judgment is excessive.  We have concluded to give the plaintiff the election to remit all above $14,234, and interest on that amount from the date of the verdict, and have a judgment for the residue, or take a new trial.  With our construction of the verdict, the present judgment is unwarranted.

*By the Court.* — The judgment is reversed, and the cause is remanded to the circuit court for further proceedings in accordance with this opinion.