# THE ECKINGTON AND SOLDIERS' HOME RAILWAY COMPANY

*v.*

# McDEVITT.

CONTRACTS; MEASURE OF DAMAGES; EXPERT TESTIMONY.

1. Where the owner of a tract of land grants to a railroad company a right of way through her land sixty feet wide and three feet deep, thereby cutting the tract into two parts, and at the same time delivers her promissory note for $500 to the company, in consideration of which the company agrees to construct and operate a railroad over the right of way and to run its cars thereon at certain specific hours day and night, and the company, after constructing the road and operating it for a time in accordance with the agreement, wholly abandons it and refuses further to operate it and run cars thereon, the measure of damages recoverable by the owner for the breach of the contract, is the actual loss she has suffered thereby, which is to be determined by the ascertainment of the value of the land to its owner with the railroad upon it and in operation and the value of the same land with the railroad abandoned and its operations ceased.

2. In the absence of actual sales of the property, under such circumstances, it is proper to ascertain such value by the opinions and estimates of persons conversant therewith.

No. 1079. Submitted June 6, 1901. Decided June 18, 1901.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury in an action to recover damages for breach of a contract concerning land and the use and occupation of it. *Affirmed.*

32

The COURT in its opinion stated the case as follows:

This is a suit at common law wherein the appellee, Florence McDevitt, recovered damages in the Supreme Court of the District for the breach of a contract which had been entered into between herself and the appellant, The Eckington and Soldiers' Home Railway Company.

The appellee owned and resided upon a tract of land, comprising upwards of twenty acres, situated on the east side of Lincoln avenue, in this District, about three-quarters of a mile northward of the northeastern boundary of the city of Washington, but within the lines of the proposed extension of certain streets of the city. The appellant, a city and suburban railway company organized under acts of Congress of the United States for this District, owned and operated a street railroad, constructed along Third street northeast as far as T street northeast, or rather such T street as extended or proposed to be extended, and which from the point of intersection of these two streets was constructed and operated eastward along the line of T street, away from the land of the appellee. It was desired by the railway company to extend its road to the northwestward over the land of the appellee so as to reach the gates of three cemeteries which bordered upon Lincoln avenue; and accordingly, on April 4, 1889, an agreement was made between the appellant and the appellee, whereby the appellee contracted to convey to the appellant, and its successors and assigns forever, a right of way sixty feet in width through her land following the line of the proposed extension of Second street east and V street north to the east line of Lincoln avenue, and to execute and deliver to the appellant her promissory note for the sum of $500, payable, with interest, on or before five years thereafter; and the appellant on its part contracted, as the condition of the grant, that it would complete the extension of its tracks on the lines indicated on or before October 1, 1889; that it would establish certain grades on the lines of street within the appellee's land which it was to occupy, and that after the extension should be completed

and opened for traffic it should run a car thereon to Lincoln avenue at least once in thirty minutes between the hours of 7:30 A. M. and 6 P. M., and at least once an hour thereafter to 9 P. M., and one car at 11 P. M.

This contract was executed under seal by the appellee and her husband, of whom the latter has since deceased; and it. was executed by the railway company by its president, but without any seal.

The appellee in due time executed and delivered to the appellant the deed of conveyance provided for in the contract and the promissory note for $500 stipulated to be made. The deed, which bore date on December 27, 1889, contained the covenant for the running of cars which was agreed on in the contract to be done by the railway company.

The railway company on its part constructed the branch road so proposed to be constructed over the right of way so conveyed, and continued to maintain and operate the same until the early part of the year 1893, when it ceased to run any car on this branch road after 6 o'clock P. M. Thereupon, on June 26, 1893, the appellee filed a bill in equity to enforce specific performance of the contract of April 4, 1889, so that the cars should be run at the specified hours. The appellee filed an answer to the bill, wherein it admitted the execution of the contract and the grant of the right of way in pursuance of it, but sought to excuse its failure to carry out its part of the contract by the running of cars on the ground that this branch road was unprofitable. It alleged also, apparently as matter of defense, that the appellee's land was cut into two parts by the extension of the road, and was for that reason rendered less valuable for subdivision into building lots. It objected also, that the appellant's obligation under the contract was such a continuing one as could not well be the object of specific performance in equity, and that there was ample remedy for the complainant at law.

On July 9, 1894, this bill of complaint was dismissed. without prejudice to the right of the complainant to resort to such remedy at law as she might be advised.

In June or July of 1893, almost immediately after the in-

stitution of the suit in equity which has been mentioned, the appellant wholly ceased to run any cars on this branch line; and soon after the dismissal of the suit the attorney of the appellant notified the attorney of the appellee that the company would not perform the contract. The appellant was then notified by the appellee to remove its tracks from her land, and that she would bring suit for damages. Accordingly, on August 8, 1894, the present suit was instituted.

The declaration contained two counts, the first of which was founded upon the express contract of April 4, 1889, and the second of which also was founded upon express contract, but not stated to be in writing. Both alleged performance of the contract by the plaintiff, here the appellee, and the breach of it by the defendant company by its failure to run its cars as stipulated. The defendant company pleaded to the declaration as a whole that it had not promised as alleged; that the value of the plaintiff's land had not been diminished, and that the plaintiff had evicted the defendant and thereby prevented the running of the cars and extinguished the right of action. To these pleas there were replications filed, and finally joinders of issue; and the cause went to trial.

At the trial the execution of the contract of April 4, 1889, full compliance with it by the plaintiff, except as to payment of the promissory note for $500, and breach of the contract by the defendant, were fully and conclusively proved and were not sought to be controverted on behalf of the defendant. Various objections were interposed by the defendant to the introduction of testimony, all of them without merit, and all of them covered by repeated and long-established adjudications which it would serve no good purpose to cite. Among the objections were that the contract of April 4, 1889, did not bear the corporate seal of the company, and that there was no proof of any charter provisions authorizing the construction by the company of the tracks in question. To the introduction in evidence of the proceedings in equity, to which reference has been made, and which were introduced as evidence of admissions on the part of the rail-

road company, objection was made on the ground that the bill had been dismissed without prejudice. A paper was offered in evidence on the part of the plaintiff showing a subdivision of the land in accordance with which she had sold lots in it, and of which sales she stated the several prices paid; and to this paper objection was made because it was not recorded among the land records of the District.

The only real question in the case for determination by the jury was that of the amount of damages to be awarded for the conceded breach of the contract. In elucidation of this question witnesses were introduced who had purchased some lots of the land from the plaintiff, and the testimony was also introduced of persons acquainted with the value of this and adjacent property. This testimony was directed to show the difference between the value of the property, with the railroad in operation according to the contract between the appellant and the appellee and the value thereof after the operation of the railroad had ceased. Similar testimony was introduced on behalf of the defendant to show that part at least of the alleged depreciation was due to the financial panic of 1893, and the consequent stagnation in the matter of the sale of real estate for several years thereafter.

Instructions on the measure of damages were requested on behalf of the plaintiff, which were given. Nine special instructions on behalf of the defendant, which were refused by the court, were to the effect that the plaintiff was not entitled to recover at all, or at most only nominal damages.

The jury returned a verdict for the plaintiff in the sum of $15,000.

Motions for a new trial and in arrest of judgment were made on behalf of the defendant. The former it is not for us to consider. The motion in arrest of judgment was based on the ground that the two counts of the declaration stated different causes of action, and that the verdict being general did not indicate upon which count it was based; and also that it did not appear that the promissory note for $500 hereinbefore mentioned had ever been paid, or that tender of payment had ever been made. At the same time application

was made on behalf of the plaintiff for amendment of the
verdict so as to show that it was based upon the first count
of the declaration; and the second count was withdrawn.
The plaintiff's application was allowed; the second count of
the declaration was withdrawn; the verdict was amended so
that it should purport to be based on the first count; and the
defendant's motions for a new trial and in arrest of judg-
ment were denied.

Thereupon judgment was rendered in favor of the plain-
tiff for the amount of the verdict, the sum of $15,000; and
from this judgment the defendant has appealed.

*Mr. W. D. Davidge, Mr. John Ridout* and *Mr. W. D.
Davidge, jr.* for the appellant:

1. Damages recoverable on a breach of contract are measured
by the *actual loss* sustained, provided such loss is what would
naturally result as *the ordinary consequence of the breach*
or as a consequence which may, under the circumstances, be
presumed to have been in the contemplation of *both parties*
as the probable result of a breach. *Hadley* v. *Baxendale,* 9
Exch. 341; *Horne* v. *Midland Rwy. Co.,* L. R. 8 C. P. 131.

This plain and intelligible rule has been expressly ap-
proved by the Supreme Court of the United States in *Howard*
v. *Stillwell & Bierce Co.,* 139 U. S. 199, 207, 208; and by
this court in *Gurley* v. *McLennan,* 17 App. D. C. 170,
as founded in justice and the presumed intention of parties
and has been, it is believed, universally adopted by the courts
of this country.   It will be observed that by the rule dam-
ages are restricted to actual loss sustained, and even then still
further restricted to such loss as would naturally result as
the ordinary consequence of the breach or as under the
special circumstances may be presumed to have been in the
contemplation of both parties to the contract as the probable
result of the breach.   The latter part of the rule, that al-
lowing the enhancement of damages because presumably
within the contemplation of both parties, has been qualified
by the case of *Horne* v. *Midland Rwy. Co., supra,* in

which case it was held that the enhanced damages must have entered into the contract, and that mere notice of the purpose of making the contract would not have the effect of enhancing damages beyond such as would arise naturally or according to the usual order of things. This is now the English law and the decision has been followed in some of the States. *Harvey* v. *Conn. RR. Co.,* 124 Mass. 421; *Ward* v. *Central RR. Co.,* 47 N. Y. 29; *Ward's, etc., Co.* v. *Elkins,* 34 Mich. 439; *Mather* v. *American Express Co.,* 138 Mass. 55. But so far as known has never been passed upon by the Supreme Court of the United State. It is unnecessary to discuss it here for the reason that there is in the present case no evidence tending in any degree to show the purpose or intention of the plaintiff or her husband in making the contract, nor that whatever such purpose or intention, the defendant had any knowledge or reason to know or believe or suspect the same. Had the proper rule of damages been given, it is manifest that instead of the extravagant verdict of $15,000 against the defendant, there must have been a very different result. There was no actual loss sustained by the plaintiff as required by the rule. All the plaintiff says is that since the breach of the contract she has not had any " offers " for her land. It is not pretended that there was any existing contract of sale of any part of the land, of which she was deprived by the breach, nor that she made any attempt to sell, nor, indeed, that she was even willing to sell; but the inference to be drawn from the evidence is that, on account of the depression of prices, she held on for better times, like hundreds of others. Hence there could be no recovery, any loss being dependent upon the future, and wholly speculative and contingent. If she continues to hold at the present time, she can sustain no loss. The precise point of the effect of the absence of actual loss was before the Supreme Court of the United States in the case of *The Western Union Telegraph Co.* v. *Hall,* 124 U. S. 444. See also *Hetzel* v. *Railroad,* 6 Mackey, 1.

2. Instead of adhering to the rule universally recognized and which was designed to afford adequate protection to a

party charged with breach of contract whilst giving com-
pensation to the other party, the court below utterly disre-
garded all the predicates of liability required by the rule and
instructed the jury as he might have done had these predi-
cates been established. In other words he virtually assumed
liability under the rule to exist, and instructed the jury as
to the method of computing damages on such assumption.
Now, it is submitted that actual loss and, if any, whether it
was the probable and natural consequence of the breach,
or was contemplated by both parties to the contract, and
whether the diminution in the market value of the land was
owing in any and to what degree, to the breach, or was
attributable to other causes, were all matters that consti-
tuted the predicate of liability, and yet in the instruction of
the court there is not the remotest allusion to them. The
jury were instructed to find for the plaintiff without regard
to the conditions of liability and hence it may be said with-
out liability on the part of the defendant. But apart from
this, the ruling as to the measure of damages is, taken by
itself, radically defective. There is nothing in the evidence
to justify a departure from the established rule and the sub-
stitution in such a case of a new rule based upon the assumed
difference in market value. Indeed, there was no evidence of
market value with or without the cars running, in the
proper signification of the term "market value." There
had been no public sale and there was no market value in
any legal sense. All the transactions were private and
special, and the opinions given in evidence were based upon
such transactions and not upon "prices established by pub-
lic sales in the way of ordinary business." Of which, so
far as appears, there never had been a single instance. 14
Am. & Eng. Ency. of Law, 467–469.

If there were no other objection to the instruction as to
the measure of damages than its failure to restrict the
amount of the verdict to the difference in market value
*caused by the breach of contract and not* the result of other
circumstances, that would be sufficient to dispose of it here
and to entitle the defendant to a new trial.

3. It was error to admit testimony of the witnesses Moore and McLeran as to their opinions concerning the value of the land with a railroad and without it. This was purely speculative and conjectural, lacking as it did any specification of the elements which entered into the formation of the opinion of the witnesses. The only effect of such testimony could be to mislead the jury and it should have been excluded. *Roberts* v. *N. Y. Elevated RR. Co.,* 128 N. Y. 499.

4. The president of a railway company has no inherent power to bind the company by any agreement except in the ordinary discharge of the company's business. He certainly has no such authority in respect of the construction of an extension of the railway. *Titus* v. *Cairo RR.,* 37 N. J. Law, 98; *Templin* v. *Chicago Rwy.,* 73 Iowa, 548. It is obvious that the answer in the equity suit signed only as it was by the then vice-president, was not sufficient in itself to establish the execution of an agreement by authority of the corporation, and the agreement and record in the equity suit should not have been admitted in evidence.

*Mr. A. S. Worthington, Mr. John C. Heald,* and *Mr. Charles L. Frailey* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant has here assigned the somewhat unusual number of thirty-nine assignments of error, of which only one has been seriously insisted on before us; and that one we regard as well settled by the authorities. It concerns the question of the measure of damages in a case like the present.

That the appellee was entitled to recover damages in this case, is too plain for argument. We do not understand it to be controverted. The execution of the contract, its performance by the plaintiff, and the breach of it by the defendant, were conclusively proved; and that something more than merely nominal damages should be awarded, we must regard as beyond reasonable question. What should be the

measure of the damages to be recovered? In the light of reason and of the numerous authorities upon the subject, we cannot regard this as a question of very great difficulty.

The contract is one concerning land, and the use and occupation of it. The owner of the land, the plaintiff in the cause, in consideration of the benefit which she presumed her concession would bring to her in the use and disposition of the remainder of it, granted to the railroad company, the other party to the contract, and the defendant in the cause, a right of way over and through the land sixty feet wide and three feet deep, thereby cutting the land into two parts; and at the same time she executed and delivered to the railroad company her promissory note for $500. That she expected the land of which she retained the use to be enhanced in value by this concession, must, of course, be assumed; for such contracts are not entered into in the ordinary course of things for mere benevolence. For the same consideration of prospective benefit to itself, the railroad company assumed to construct and operate a railroad over the right of way so given, and to run its cars thereon at certain specific hours of the day and night. The plaintiff fully performed the contract on her part, and as to her it is wholly executed and nothing remains to be done. The defendant's side of the contract is in part executory. It constructed the road and for a time operated it in accordance with the agreement; and then it wholly abandoned it and refused further to operate the road or to run its cars thereon. And then it attempted to escape liability on the ground that the plaintiff had suffered no actual loss, since her land had been restored to her and she now has it, notwithstanding that a trench sixty feet wide and three feet deep has been dug through it, which, according to the defendant's solemn averment under oath, has rendered it less valuable for the only purpose for which enhancement in value was sought by both parties to the contract — its subdivision into city lots. Such is the case which we have before us.

The damages for which the plaintiff is entitled to recover is the actual loss which she has suffered by reason of the

abandonment of the railroad and the cessation of its opera-
tion by the defendant.    That actual loss is only to be deter-
mined by the ascertainment of the value of the land to its
owner with the railroad upon it and in operation, and the
value of the same land with the railroad abandoned and
ceased to be operated.    This is what the trial court told the
jury in the instruction which it gave on behalf of the plain-
tiff; and the instruction was undoubtedly correct.    *Dawson
v. Pittsburg,* 159 Pa. St. 317; *Mewes v. Crescent Pipe Line,*
170 Pa. St. 364; *Railroad Co. v. Knapp,* 51 Tex. 592; *Fer-
guson v. Stafford,* 33 Ind. 162; *Topeka v. Martineau,* 42
Kans. 387; *Dwight v. Commissioners,* 11 Cush. 201; *Pike
v. Chicago,* 155 Ill. 656; *Railroad Co. v. Kerth,* 130 Ind.
314; *Railroad Co. v. De Lissa,* 103 Mo. 125; *Baltimore v.
Brick Co.,* 80 Md. 458; *Benjamin v. Hillard,* 23 How. 149;
Shepherd v. B. & O. RR. Co.,* 130 U. S. 426.

In the absence of [evidence of] actual sales of the prop-
erty, which would not always be practicable or possible, and
which, therefore, it would be absurd to require as a criterion
of value, it is right and proper to ascertain such value by the
opinions and estimates of persons conversant therewith, not-
withstanding that such opinions and estimates are in their
nature to a certain extent speculative.    Were the rule
otherwise, no values could be established at all in the
absence of actual sales.    This is the well-established doc-
trine of the law conclusively settled for us by the Supreme
Court of the United States in the case of *Montana Rwy.
Co. v. Warren,* 137 U. S. 348, where it is said by Mr. Justice
Brewer, speaking for the court, that, in respect to the value
of real estate, "the opinions of witnesses familiar with the
territory and its surroundings are competent;" and also,
that " at best, evidence of value is largely a matter of opin-
ion, especially as to real estate."    See also *Blair v. Charles-
ton,* 43 W. Va. 62; *Diedrich v. Railroad Co.,* 47 Wis. 662;
*Curtin v. Railroad Co.,* 155 Pa. St. 20; *Tucker v. Railroad
Co.,* 118 Mass. 546; *Chandler v. Jamaica Pond Aqueduct,*
125 Mass. 544; *Hunter v. Railroad Co.,* 84 Iowa, 605;
*Railroad Co. v. Union Stock Yards,* 120 Mo. 541; *Lee v.*

*Springfield Water Co.,* 176 Pa. St. 223, and the cases hereinbefore cited.

As stated in the case of *Dedrich v. Northwestern RR. Co.,* 47 Wis. 662, "evidence of this kind is admitted from necessity." It is the fault of the defendant, trespasser or wrongdoer that the necessity has supervened.

The principal part of the argument on behalf of the appellant is devoted to the elucidation and supposed application to this case of the rule laid down by the English Court of Exchequer in the case of *Hadley v. Baxendale,* 9 Exch. 341, as qualified by the subsequent decision of the Court of Common Pleas in the case of *Horne v. Midland Railway Co.,* L. R. 8 C. P. 131, which rule is thus stated:

" Damages recoverable on a breach of contract are measured by the actual loss sustained, provided such loss is what would naturally result as the ordinary consequence of the breach, or as a consequence which may under the circumstances be presumed to have been in the contemplation of both parties as the probable result of such a breach."

This rule was approved by the Supreme Court of the United States in the case of *Benjamin v. Hillard,* 23 How. 149, 167, and again in the case of *Howard v. Stillwell & Bierce Mfg. Co.,* 139 U. S. 199, 206; and the principle of it was applied in several intervening cases. We had occasion to apply the same rule in this court in the case of *Gurley v. MacLennan,* 17 App. D. C. 170.

But there is no antagonism between this rule and that applied by the court below in the present case. The purpose of the rule in the case of *Hadley v. Baxendale* was to exclude consideration of remote, uncertain, and speculative profits as elements in the estimate of damages; and it is believed that in our country the courts are unanimous, or almost so, in the exclusion of such elements of damages from the consideration of the jury. But that rule ends where the rule in the present case begins. That rule requires that only actual loss sustained, which is the natural result as the ordinary consequence of the breach, should be recovered in a suit for breach of contract. The rule laid

down in the present case assumes that, when an improvement exists on land by the convention of parties, such as the railroad in the case and its operation were undoubtedly presumed to be, and that improvement is removed in violation of the convention, the consequent depreciation in the value of the land, if such depreciation is shown, is the natural result and the ordinary consequence of the wrongful removal of the improvement; and the amount of such depreciation is the measure of damage. Plainly there is no antagonism between these two rules. Nor does there any antagonism arise on the ground stated in the second branch of the rule in the case of *Hadley* v. *Baxendale,* that the damage for which recovery is to be had must be such as under the circumstances may be presumed to have been in the contemplation of both parties as the probable result of such breach. It is not often that parties stipulate expressly with reference to the damages that might result from their violation of their own contracts, and they did not so stipulate in the case before us. But when they contemplate advantages, as here they undoubtedly did, as the result of the performance of their contract, they must in reason be held to have contemplated the corresponding disadvantages as the result of the violation of such contract, whether the question of such possible violation actually entered into their thoughts or not. Every man must be presumed to have contemplated and intended the natural and ordinary consequence of his own wrongful act; and there is no more natural result of the wrongful removal of an improvement from land than depreciation in the value of such land.

The *New York Elevated Railroad Cases* — *Roberts* v. *Railroad Co.,* 128 N. Y. 455; *Doyle* v. *Railway Co.,* 128 N. Y. 488, and *Gray* v. *Railway Co.,* 128 N. Y. 499 — are also cited as establishing a different doctrine from that held by the trial court in the instructions granted to the jury in the present case. But a careful reading of those cases will show that they are not subject to any such construction. The contention there was to show by expert witnesses what the value of abutting real estate, assumed to have been in-

jured by the construction of the elevated railways, would be
if the nuisance of such construction were removed. This
the Court of Appeals of the State of New York held could
not be allowed, inasmuch as it contemplated a condition of
things which might never exist and which, therefore, was
wholly speculative. Had the contention been as to the
present value of the property with the alleged nuisance ex-
isting and the past value of it before the nuisance was placed
there, a very different question would have been presented.
And Mr. Justice Peckham, now of the Supreme Court of
the United States, and who was then a member of the Court
of Appeals of New York, and wrote the opinion in the
*Roberts Case,* is careful to make the distinction. For he
says: "I refer to this not for the purpose of throwing any
doubt upon the admissibility of expert evidence upon the
question of the past or present value of real estate, where
the witness is shown to be competent to give an opinion
thereon. This was decided years ago by this court, and has
been continuously approved since that time. See *Clark* v.
*Baird,* 9 N. Y. 183."

This, we think, disposes of the principal contention in the
present case; and the other questions sought to be raised by
the numerous assignments of error do not seem to us to re-
quire serious consideration. They are elementary questions
which must be regarded as having been settled long ago.
Among them is the question presented by the appellant's
motion in arrest of judgment in the court below, to the
effect that the declaration contained two counts stating dif-
ferent causes of action, and the verdict being general did
not indicate upon which count it was based, and, therefore,
could not stand. Notwithstanding that the plaintiff in the
court below sought to obviate this question by withdrawing
the second count of the declaration or suffering a nonsuit
upon it, the question is again raised in this court by the last
of the appellant's thirty-nine assignments of error. But its
consideration by us is unnecessary, since upon the argument
before us it was expressly abandoned by the appellant.

We are of opinion that there was no error in the rulings

of the trial court in the premises, and that the judgment of that court should be *affirmed, with costs. And it is so ordered.*

A writ of error to the Supreme Court of the United States was prayed by the appellant and allowed June 25, 1901.