## THE UNITED STATES *v.* MALONEY.

---

BONDS, ACTIONS ON; ASSIGNMENT OF BREACHES; CONTRACTS.

1. In an action on a bond breaches of the condition thereof must be assigned by the plaintiff, and such breaches must show the extent of the damnification suffered.

2. Where to such an action *non est factum* is pleaded and breaches have not been assigned in the declaration, the plaintiff may suggest the breaches upon the record, in making up the issue to be tried on the plea; which suggestion may be entered at any time before trial or after judgment for plaintiff on the issue of *non est factum,* or fraud in obtaining the bond.

3. The recitals in a bond sued on, and all material traversable matter set forth in the breaches and which have not been traversed by the pleas, are to be taken as admitted facts on the trial.

4. In an action against the sureties on a bond given to secure the performance of a contract, they are as much bound by the true intent and meaning of the contract subscribed by them as the principal himself.

5. Delay in the commencement of work under a contract cannot be urged as ground for annulling the contract or exonerating the contractor from liability, in an action on a bond given to secure the performance of the contract, when the contractor himself caused the delay.

6. The annulling by the Government of a contract for the furnishing of materials and execution of certain work, under a power reserved therein to do so in event of the default of the contractor, will not exonerate the contractor or the sureties on his bond from liability for all prior breaches of the contract.

7. Where the work covered by such a contract was to be done on four sections, the contract is separate as to each section, and if the Government after default by the contractor completed the work on three sections only, it is entitled to recover against

the sureties on the contractor's bond what damages it has suf-
fered by reason of the default, whether in the non-performance
of work on one section or another of those embraced in the
contract.

8. If in such a suit the evidence is conflicting as to whether there was
actual default by the contractor the case should go to the jury.

9. Changes and modifications by the Government, in such a case, in
the work performed by it, would not nullify the contract,
where the contract itself provides the manner of treating such
changes, but at most, would only be proper subject to be con-
sidered in estimating the damages.

No. 345.   Submitted October 17, 1894.   Decided November 23, 1894.

HEARING on a bill of exceptions by the United States in
an action on a bond.   *Judgment reversed.*

The FACTS are sufficiently stated in the opinion.

*Mr. A. A. Birney,* United States Attorney, and *Mr. C. H.
Armes,* Assistant, for the United States.

*Mr. William Birney* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the
Court:

This action was instituted upon a bond against the
principal, William Z. Partello, and his two sureties, Patrick
Maloney and Harry L. Fillius; but there being no service
of process upon the principal the action was prosecuted to
trial against the sureties.   The trial resulted in a verdict
for the defendants, under the direction of the court, and the
United States have appealed.

The bond was given for the due performance of a con-
tract entered into by Partello, the principal in the bond,
with the Government of the United States, for the furnish-
ing of materials and the execution of certain works of im-
provement, according to plans and specifications, in what is
known as the Yellowstone National Park, a government
reservation in the State of Wyoming.   This contract was
entered into under and in pursuance of an act of Congress of

the 30th of August, 1890, Ch. 837, being the general appropriation act of that date.  In this act the sum of $75,000 was thereby appropriated for completing, improving, maintaining and extending roads and ways in the Park, and the appropriation was made with this *proviso*, " That not less than fifty thousand dollars of this appropriation shall be expended for work to be let in sections, after advertisement, to the lowest responsible bidder or bidders therefor, to be executed under the supervision and inspection of an engineer officer of the Army under the direction of the Secretary of War."

After all preliminaries had been observed and complied with, as prescribed by the statute, and Partello had become the lowest bidder for sections 1, 2, 3 and 5 of the work offered to be let under the *proviso* of the statute referred to, he executed the contract for doing the work, and the bond sued on, given for the performance of the contract.  The contract bears date the 16th of May, 1891, and the bond was executed on the 29th of May, 1891.

The recitals and conditions of the bond are as follows:

" Whereas the above bounden William Z. Partello has, on the sixteenth (16th) day of May, 1891, entered into a contract with Major William A. Jones, Corps of Engineers, U. S. Army, for furnishing all necessary material and labor and constructing wagon roads in the Yellowstone National Park:

" Now, therefore, if the above bounden William Z. Partello, his heirs, executors, and administrators, shall and will, in all respects duly and fully observe and perform all and singular the covenants, conditions and agreements, in and by the said contract agreed and covenanted by him to be observed and performed, according to the true intent and meaning of said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, including the covenant that the said William Z. Partello

shall be responsible for and pay all liabilities incurred in the prosecution of the work for labor and material; then the above obligation shall be void and have no effect; otherwise, to remain in full force and virtue."

The breaches of the contract were not assigned in the declaration; and the sureties, severally, pleaded *non est factum*. And without joining issue upon the plea, the plaintiffs spread the contract upon the record, and suggested breaches thereof, covered by the condition of the bond. To entitle the plaintiffs to recover damages for the breaches of the condition of the bond, though the issue of *non est factum* be found in its favor, it was necessary, under the statute of 8 and 9 W. 3, Ch. 11, Sec. 8, that breaches should be assigned. It is only in respect to alleged breaches of the condition of the bond that the plaintiff is entitled to recover damages, and such breaches must show the extent of the damnification suffered. In the case of a plea of *non est factum*, or that the bond was obtained by fraud, and the breaches have not been assigned in the declaration, the established practice is to allow the plaintiff to suggest the breaches upon the record, in making up the issue to be tried on the plea; and to proceed to have the damages assessed by the same jury that determines the issue on the plea, if that issue be found for the plaintiff. This suggestion of breaches may be entered at any time before the trial, as well as after the judgment for the plaintiff on the issue of *non est factum*, or fraud in obtaining the bond. *Roberts* v. *Mariett*, 2 Wms. Saund. 187*a*, note (2); *Ethersey* v. *Jackson*, 8 T. Rep. 255. Here the breaches were assigned before the issues were made up for trial.

The parts of the contract with reference to which the breaches have been assigned, and which are material to the questions raised in this action, are the following:

"The said William Z. Partello shall commence work on or before the 16th day of June, 1891, and shall complete the work on or before the 1st day of October, 1891. If, in any

event, the party of the second part shall delay or fail to commence with the delivery of material or the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part, or his successor legally appointed, shall have power, with the sanction of the chief of engineers, *to annul this contract* by giving notice in writing to that effect to the party (or parties, or either of them) of the second part; and, upon the giving of such notice, all money or reserved percentage due or to become due to the party or parties of the second part, by reason of this contract, shall be and become forfeited to the United States; and the party of the first part shall be thereupon authorized, if an immediate performance of the work or delivery of the materials be in his opinion required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in Section 3709 of the Revised Statutes of the United States. . . . It is further understood and agreed that in case of failure on the part of the party of the second part to complete this contract as specified and agreed upon, that all sums due and percentage retained, shall thereby be forfeited to the United States, and that the said United States shall also have the right to recover any or all damages due to such failure in excess of the sums so forfeited, and also to recover from the party of the second part, as part of said damages, whatever sums may be expended by the party of the first part in completing said contract, in excess of the price herein stipulated to be paid to the party of the second part for completing the same. . . . All rights of action to recover for any breach of this contract by the said William Z. Partello are reserved to the United States. . . . This contract shall be subject to approval of the Chief of Engineers, U. S. A."

The plaintiffs assigned several breaches of this contract,

and claim to have sustained damages to the amount of $13,614.40, in doing and executing the work; that amount being in excess of the price stipulated to be paid to the contractor Partello. Whether the bond could be held liable for any amount beyond the penalty, is a question not presented on this appeal. Of the work let to the contractor, the Government did the work on and completed sections 1, 2 and 3, and left undone the work on section 5.

The breaches assigned are, that Partello wholly failed to furnish any material or labor, or to do any work whatever, under the contract; that he did not commence or complete the work as required by the contract, and wholly neglected to perform the same; and so neglecting and making default, the Government, by its duly authorized officer or agent, and in pursuance of the contract, vacated and annulled the same, and expended large sums of money in having done the work that the contractor was obligated to do.

After the breaches thus assigned, the plaintiff joined issue on the plea of *non est factum*, and thereupon the defendants obtained leave and filed additional pleas. These additional pleas are: 1st. That the condition of the bond being for the faithful performance of the contract, the performance of the said contract was rendered impossible and was made void, by the neglect and delay of the plaintiff's officer and agent, the Chief of Engineers, United States Army, to perfect the same, in that the contract provides that the contractor should commence the work on or before the 16th of June, 1891, but that said contract was not approved, as it was required to be, by said Chief of Engineers, until June 24th, 1891. 2d. That the alleged bond being conditioned for the faithful performance of the contract therein mentioned, the plaintiffs by their officer and agent, William A. Jones, Major, Corps of Engineers of the United States Army, with the sanction of the chief of said engineers, on or about the 2d of September, 1891, annulled said contract by giving notice in writing to that effect to said Partello, the principal in the bond. Issues

were joined on these two additional pleas, and the cause proceeded to trial.  And after the evidence was all in, on the part of the plaintiffs, the court was requested to instruct the jury to return a verdict for the defendants; which instruction was given, and the verdict rendered accordingly.  To this ruling the plaintiffs excepted.

There is no special ground stated upon which this instruction was given.  We must assume, therefore, that the court concluded that there was no evidence *legally* sufficient upon which the plaintiffs could recover against the defendants, assuming all the evidence offered by the plaintiffs to be true.

The general issue of *non est factum* seems to have been dropped or abandoned, after putting in the two pleas in confession and avoidance.  The issues made upon these two latter pleas seem to present the only material questions in the case, and the *onus* of supporting the affirmative of those issues rested upon the defendants.  The recitals in the bond, and all material traversable matter set forth in the breaches assigned, and which have not been traversed by the pleas of the defendants, are to be taken as admitted facts.  They are not triable by the jury, because not put in issue, and the court must take them as admitted on the record.  *Toland* v. *Sprague*, 12 Pet. 335 ; *Bingham* v. *Stanley*, 2 Q. B. 117 ; 1 Taylor Ev., Secs. 748, 750.

It is contended, that inasmuch as this action is against sureties, the bond and the contract should be strictly construed, and that the liability of the sureties should not be extended by implication beyond the terms of the contract.  That, as a general principle, is certainly true; but it is equally true, that sureties are as much bound by the true intent and meaning of the contract subscribed by them as the principal himself; and the general rule of construction is, to hold the surety bound to the same extent that the principal is bound, under the same contract.  *Benjamin* v. *Hillard*, 23 How. 149 ; *Read* v. *Bowman*, 2 Wall. 591.

1. Now, in this case, the fact that the contract did not receive the endorsement of the approval of the Chief of Engineers until the 24th of June, 1891, eight days after the time fixed for the commencement of the work, as alleged by the first additional plea, did not necessarily render the performance of the contract impossible, and therefore render the contract void, so as to discharge the principal and sureties from the bond. What may have been the effect of the delay in obtaining the approval of the Chief of Engineers, if that delay had been occasioned by the neglect of the government's officials, in the case of suit, for not completing the work within the time limited, or where the party contracting had offered to do the work at the day fixed in the contract, is a question quite different from that attempted to be made available as a defense by the first additional plea. Such delay, if by the fault of the government's agents, could, possibly, have been pleaded as an excuse for non-completion within the time fixed by the contract, or if the party had offered to commence the work on the day designated, he might, possibly, have claimed the right to elect to abandon the contract altogether, because of such neglect and delay. But he did not place himself in any such position, nor did he claim any such right. There is no pretense that he was hindered or delayed in any manner by what is alleged to have been the negligence of the government's agents in procuring the approval of the contract. He never offered to do the work, and never made any preparation for the undertaking of the work, though, it appears, he was urged to do so. It appears he was entrusted with the papers in ample time to have enabled him to have them executed and returned to the proper officer, so that the approval of the Chief of Engineers could have been obtained before the time for commencing the work. But he was absent in a distant part of the country, and he kept the papers in his possession until within a few days of the time fixed for commencing the work, and too late to procure such approval before such time

fixed by the contract.   He sent the papers to Major Jones at
St. Paul, Minn., under date of the 11th of June, 1891, from
the Hot Springs in Arkansas, and they were then required
to be sent to the City of Washington to the office of the Chief
of Engineers.   This produced the delay of the eight days
beyond the time for commencing the work, according to the
terms of the contract.   The party himself being the cause of
the delay, neither he nor his sureties can be heard to urge
such delay as ground for annulling the contract, or for ex-
oneration from all liability under it.

2. The next question presented on the pleadings and proof
is as to the effect of annulling the contract by the agents of
the Government, on or about the 2d of September, 1891, by
giving notice in writing to that effect, to the said Partello,
according to the provision of the contract, and as averred
by the second additional plea.

It is conceded that there was an entire failure on the part
of the contractor, the principal in the bond, to do any part
of the work.   In such state of things, what could be done by
the United States?   It was made the duty of the Govern-
ment, by the act of Congress, to let the work in sections, and
to supervise and inspect the same under the direction of the
Secretary of War.   That means that the Government should
see that the work was faithfully done.   And that being the
duty of the Government, with reference to which the parties
contracted, the Government was necessarily clothed with the
reasonable power and means to accomplish the end.   To
effect this, the contract provides, that, " if, in any event, the
party of the second part [the contractor] shall delay or fail
to commence with the delivery of material, or the per-
formance of the work on the day specified herein, or shall,
in the judgment of the engineer in charge, fail to prosecute
faithfully and diligently the work, in accordance with the
specifications and requirements of this contract, then, *in either
case,* the party of the first part, or his successor legally ap-
pointed, shall have power, with the sanction of the Chief of

4 Ct. App.—33

Engineers, *to annul this contract* by giving notice in writing to that effect to the party (or parties, or either of them,) of the second part," &c.

The annulling of the contract under this power reserved to the Government, certainly does not exonerate either the principal or his sureties from liability for all prior breaches of the contract. Such annulment in no manner affects the obligation under the contract that had accrued prior to that time. The vacation and annulment of the contract, as authorized by the terms thereof, did not release the bond *ab initio*. All the default that had been committed, and all the consequences thereof to the United States, that were properly covered by the bond, are matters for which the United States are entitled to recover. This is, by necessary implication, the effect of the provision of the contract to which we have referred. The manifest object of this reserved right to annul the contract was simply to avoid the difficulty of having two or more contractors under different contracts for doing the same work; and that right was predicated of a state of things that both parties contemplated and agreed to. And this being an express stipulation in the contract, with reference to which the sureties in the bond contracted, they are equally bound thereby as the principal.

3. There are several other matters urged by the defendants, supposed to be defensive to the action, though not within the issues formed by the pleadings.

It is contended that the contract with Partello contemplated the doing of the work on sections 1, 2, 3 and 5 as an entirety, and as the Government, under the power reserved to it in the contract, only did the work on sections 1, 2 and 3, therefore it had no right to sue until the work on all the sections embraced by the contract had been completed. In this contention we do not agree. The contract was made with reference to the provisions of the act of Congress, and

is therefore separate as to each section; though all the sections contracted for are embraced in general terms and provisions of the contract, alike applicable to all of them. The question here is simply as to the extent of the default of the contractor under his contract, and how much the Government has suffered by reason of such default; whether in the non-performance of work on one section or another, of those embraced in the contract. And the Government is entitled to recover, as part of the damages, " whatever sums .may have been expended by it in completing said contract, in excess of the price herein stipulated to be paid to the party of the second part for completing the same."

4. Then, it is contended that the Government commenced work on three of the sections before the contractor could have been treated as in default, and therefore he was released from the contract. But, in regard to this, there was a conflict of evidence, and it should, therefore, have been submitted to the jury. The question, however, is not a matter in bar of the action, but simply matter to be considered in estimating the damages. If the contractor was not in default, and the Government commenced the work, but did not exclude the contractor, when he offered to take charge and proceed with the work, according to contract, the contractor would have been entitled to all the profit on the work performed according to specifications. The Government could not supplant the contractor, as to his profits on the work, by anticipating him in the time of commencement. But this is an immaterial question, as all the facts show that the contractor was not ready, and did not offer to commence the work at the time fixed, or at any time thereafter. There is no pretence that the contractor was prevented in any manner from taking charge of and proceeding with the work, until after the 2d of September, 1891. On the contrary, the evidence shows that he was urged to take charge of and go on with the work.

5. Then, again, it is contended that there were changes .

and modifications in the plan and specifications of the work, that required an additional agreement in writing, in order to bind the parties. But this, it is clear, cannot be set up as a bar to this action. If there were any such changes and modifications in the work performed by the Government, the contract itself provides the manner of treating such changes and modifications; but they did not nullify the contract, and, at most, could only be a proper subject to be considered in estimating the damages. There does not, however, appear to be any evidence to show that there was any material change in the plan and extent of the work, as performed by the Government, from that contemplated by and provided for by the contract.

It is clear, we think, that there was evidence to be considered by the jury, upon the issues made by the pleadings, and that there was error in directing a verdict for the defendants. It follows that the judgment below must be reversed, and a new trial had; and it is so ordered.

*Judgment reversed, and new trial awarded.*