# ALCAEUS HOOPER *vs.* THEODORE AND JAMES E. HOOPER.

*Guaranty—Measure of Liability of Guarantors—Limitations—Payment—Interest on Interest—Contribution Between Guarantors.*

A guaranty is a mercantile instrument to be liberally construed, according to the intention of the parties, as manifested by the terms of the guaranty taken in connection with the subject-matter, and in order to ascertain the intention of the parties, the circumstances of the whole transaction may be considered.

The Statute of Limitations begins to run in favor of a guarantor from the time he is liable to suit, and this may or may not be the same time the principal debtor becomes so liable.

When a guarantor agrees to pay a certain debt of the principal upon thirty days notice, his liability is not enforceable until after the expiration of the designated time, and the Statute of Limitations does not begin to run before that time.

The liability of a guarantor is coextensive with that of the principal, unless it be expressly limited. And, so, where the principal debtor makes a part payment before the Statute of Limitations has attached, this fixes a new date from which the statute begins to run as to a guarantor or surety.

Where one of several guarantors pays the debt before it has been barred by limitations, he is entitled to demand contribution from the other guarantors, and the Statute of Limitations does not begin to run against such demand until the date of such payment.

Mere delay by the creditor in demanding payment from the principal debtor will not discharge a guarantor, unless the delay has been unreasonable and loss and injury have resulted therefrom to the guarantor. If, during the whole time, the principal debtor was unable to pay, the delay has not injured the guarantor.

A was indebted to the W. Co. to the extent of $41,224. The W. Co. was indebted to B in the sum of $23,000, and to C in the sum of $60,000, and these sums stood to their credit on the books of the company. B and C were officers of the company, and also guarantors, together with D, of A's debt to the company. They caused entries to be made on the books of the W. Co., by which B's account and C's account were each debited with $20,612, and the total of these two debits was credited upon A's account. The money was in bank, subject to the control of the W. Co. *Held*, that the result

of this transaction was to extinguish A's debt, and was such a payment to the W. Co. of the amount due under the guaranty as entitled B and C to demand contribution from their co-guarantor, D.

Where the guaranty is of any sum not exceeding $35,000, for goods sold and money loaned to a certain party, and there is no provision made for an immediate payment, the guaranty embraces also interest upon the capital sum mentioned.

Where the parties to a transaction amongst themselves treat accrued interest as an augmentation of the original principal sum, and charge up interest thereon, one of the parties cannot afterwards object to such method of computation as a compounding of interest.

In April, 1889, A, B and C executed a guaranty by which they jointly and severally agreed to pay to the W. Co., on thirty days notice, any sum that might then or thereafter be due to the W. Co., not exceeding $35,000, for goods sold and money loaned to D, each of said guarantors reserving the right to withdraw from the agreement by written notice to the others and to the company, such notice, however, not to cancel his obligation as to indebtedness existing when given. Under this guaranty, loans were made to D by the W. Co., beginning in October, 1888, and extending to June, 1889. In 1890 and in 1891 D paid the interest on the indebtedness, and on February 7, 1894, gave a note for part of the principal and interest, which was credited on the account as a payment. Up to July, 1891, C was the treasurer of the W. Co., and, in accordance with their custom, charged up interest on the account every four months. On April 15, 1891, C notified the other guarantors and the W. Co. that he declined to be responsible under the guaranty for any indebtedness which should be incurred after that date. On March 26, 1894, the W. Co. demanded payment of the indebtedness from D and from the guarantors. D was unable to pay, and A and B notified C that they would pay the same, and requested him to contribute his proportion. On April 2, 1894, A and B paid to the W. Co. the sum of $41,224, being the amount of D's indebtedness, including interest, calculated as above mentioned, and on the next day filed a bill for contribution against their co-guarantor, C. This bill was dismissed because it was held that the defendant's liability under the guaranty did not begin until after thirty days notice, and the notice from the W. Co. had been given less than thirty days before the suit was instituted. On May 29, 1894, the present bill was filed, asking for a decree compelling the defendant C to contribute and pay to A and B his proportion of the debt covered by the guaranty, and so paid by the plaintiffs. The guarantors and the principal debtor were brothers, and the object of the guaranty was to aid D, who was less prosperous than the others. The defendant relied chiefly upon the Statute of Limitations. *Held*,

1st. That the intention of the parties was not that the guarantors should only be liable for three years (the period of the Statute of Limitations) from the date of the guaranty, or for three years from the date of the

last item in the account due to the W. Co., but that they should continue liable so long as the liability of the principal debtor continued a subsisting, undischarged indebtedness, and that their conditional liability to pay became a fixed obligation, as against them, not at the time the principal debtor was liable to suit, but upon the expiration of the thirty days notice from the W. Co.

2nd. That by the terms of the guaranty, the guarantors could not be required to pay, and could not be sued for a failure to pay until after the expiration of a thirty days' notice from the W. Co., and therefore the Statute of Limitation did not begin to run in their favor before that time, however it might have affected the principal debtor.

3rd. That where a claim is enforceable against the principal debtor, it is also enforceable against the guarantors, their liability being co-extensive with his, and since payments on account of the indebtedness were made by D, the principal debtor, before the expiration of three years from the time it accrued, his liability to the W. Co. was not barred by limitations at the time the plaintiffs paid the same, and it was consequently not barred as against the guarantors.

4th. That under the circumstances of this case, the Statute of Limitations did not begin to run against the claim of the plaintiffs for contribution from their co-guarantor until the date of the payment by them to the creditor.

5th. That since there was no evidence that the principal debtor D was at any time able to discharge the indebtedness, or that he was less able to do so in March, 1894, when demand was made than previously, the defendant was not injured by the delay in demanding payment, and was not entitled to rely upon the defence of *laches*.

6th. That since the defendant had assented to the practice of the W. Co. in charging up interest on the account of D every four months, he could not now question its propriety, and that the limitation of the sum to be loaned or advanced by the W. Co. to $35,000 was to be construed as exclusive of interest thereon.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.), by which it was adjudged that the defendant pay to the plaintiffs the sum of $14,329.97.   The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Edward Otis Hinkley* and *Thos. Foley Hisky* (with whom was *John T. Morris* on the brief), for the appellant.

The appellant contends: (1.) That on a true construction of said guaranty, the Statute of Limitations began to run on so much of said indebtedness as was in existence at the date of the guaranty, from that date; and as to the several items of indebtedness accruing thereafter, due by William J. Hooper to the Woodberry Manufacturing Company, the Statute of Limitations began to run, as to each item, from the day of its charge. (2.) That there is nothing in the case to take it out of the Statute of Limitations. (3.) That the withdrawal of the appellant from the guaranty, in pursuance of its terms, did not stop the statute from running, nor operate in any manner other than to stop the said company from lending more money to William J. Hooper on the faith of it. (4.) That the fact of the appellant having been treasurer down to 15th July, 1891, did not stop the statute from running. (5.) That the conversation of William J. Hooper with the appellant is not sufficient to take the case out of the Statute of Limitations. (6.) That the utmost that appellees can *claim* is one-third of the sum of $35,000, and no sum beyond that amount could be recovered; since the sum mentioned in the guaranty is in the nature of a penalty in a bond, and it was the fault of the creditor that interest was "piled up" to more than $6,000, with the result of which neglect appellant should not be charged. (7.) That compound interest cannot be charged in any manner whatever; and no interest was chargeable on the sum guaranteed until demand was made. (8.) That the payment alleged to have been made by the appellees in the manner adopted, as shown in this case, namely, by a mere charge on the ledger of the Woodberry Co., is not a sufficient payment, under the circumstances of this cause, to entitle the appellees to force appellant to contribute at all. (9.) That under the peculiar circumstances of this case, *laches* is a good defence. (10.) That the taking of a promissory note, at six months, from Wm. J. Hooper by the Woodberry Co., without the knowledge or consent of the appellant, operated to discharge him, on the ground that

time given by a creditor to the principal exonerates the surety.

The Statute of Limitations ordinarily begins to run when the right to sue the debtor commences.  *Lamb* v. *Ewing*, 12 U. S. App. 22 ; *Codman* v. *Rogers*, 10 Pick. 112 ; *Wood on Limitations*, sec. 146.

In cases where demand is unnecessary to fix the liabilily, no notice to the guarantor is required before suit can be brought.  *Wood on Limitations*, vol. 1, pages 313 and 402. " Such absolute guaranty takes effect as soon as it is acted upon."    *Yancey* v. *Brown*, 3 Sneed (Tenn.) 89.    " Where the guarantor is not prejudiced by want of notice, he is liable as if notified."    *Simons* v. *Steele*, 36 N. H. at 81.

In *Little* v. *Edwards*, 69 Md. 499, this Court held that the statute began to run from the date of the guaranty of the judgment, because the assignee of said judgment could have then issued execution on it.    Could not the creditor in this case, upon the making of each loan, immediately have given notice of thirty days, according to the terms of the guaranty, and brought suit at the expiration of that time, had payment not been made ?    If so, then the statute began to run as to each loan from its date, for " when the account is all on one side, it has not the character of mutual accounts, and so far as the Statute of Limitations is concerned, the cause of action arises from the date of each item ; and they are respectively barred when more than six years (three years in Maryland) have intervened between their dates and the commencement of suit."    *Hodge* v. *Manley*, 25 Vermont R. 210.

The last loan, as per appellees' account filed with the bill was made June 4, 1889, and this suit was not commenced until May 29, 1894, thus leaving the whole amount barred by the Statute of Limitations.    In *Offord* v. *Davies*, 31 L. J. N. S. (C. P.) page 319, there was a guaranty for twelve months for all such bills as plaintiff might discount, not exceeding £600 ; and EARL, C. J., in his opinion, said : " This promise itself creates no obligation ; it is

in effect conditioned to be binding if the plaintiff acts upon it." * * * There were certain bills discounted and a revocation, and the Court held each discount to be a *separate transaction*, creating a liability on the defendants until it is repaid." See also *Coulthart, &c.,* v. *Clementson,* L. R. 5 Q. B. Div. 42.

The contract of each guarantor was his several contract, and one guarantor cannot, by paying at any time he sees fit, revive the debt as to the others. *Hatchett* v. *Pegram,* 21 La. Ann. 722 ; *Kimball* v. *Cummins,* 3 Metc. (Ky.) 327 ; *Theobald on Suretyship,* 113 ; *Biscoe* v. *Jenkins,* 5 Eng. (Ark.) 108 ; *Cross* v. *Allen,* 141 U. S. 536.

The payment, it must be noted, is alleged to have been made by the appellees in April, 1894, more than five years after the date of the guaranty, taken as of April 1, 1889, and nearly five years after the limit of the guaranty had been reached. " Part payment by one of several joint debtors of a debt barred by limitations revives the debt *as to him*, and forms a new point from which the statue begins to run, but does not revive is as against the other joint debtors." *Border* v. *Peay,* 20 Ark. 293. In Maryland, payment of interest on a bond will not take it out of the Statute of Limitations, nor will an express acknowledgment of the debt revive the remedy upon a bond barred by the Act. *Carroll* v. *Waring,* 3 G. & J. 491 ; *Cocke* v. *Hoffman,* 5 Lea (Tenn.) 105 (A. D. 1880) ; *Van Keuren* v. *Parmelee,* 2 Comst. 523 ; *Wood on Limitations,* 2d edition, section 145, page 398.

The Court below seemed to be of opinion, notwithstanding the provision as to notice of withdrawal provided that "such notice should not cancel his obligation as to indebtedness existing when it is given," that said notice was an acknowledgement by appellant made at its date sufficient to remove the bar of the statute. But most assuredly such a provision was entirely unnecessary. No notice that he intended to withdraw for the future could relieve him of his responsibility under the guaranty, as to money loaned pre-

viously on the faith of it. As a matter of fact, the inten-
tion of the parties probably was that if any one withdrew,
the existing state of affairs was not to be thereby altered.
If then his liabilities for money loaned remained, why did
not his rights acquired under the law? Further than that,
no acknowledgment is ever *forced* out of language. This
Court has decided it must be clear and fairly shown the ad-
mission of the debtor that the debt had never been paid.
In other words, he must *recognize his* debt. *Beltzhoover* v.
*Yewell*, 11 G. & J. at 216.

The decree signed in this case was for $14,329.97, and
interest from date, which was for one-third of $35,000,
principal and interest, and interest compounded thereon.
But appellant contends that the amount to be recovered
cannot exceed $35,000, and interest from day of demand
on so much of the debt as was principal. Clearly the
object of fixing a limit to the liability of the guarantors
extended as well to any claim for interest prior to demand
as for principal. Such would be a reasonable interpretation
according to the "intent of the parties as disclosed by the
instrument, read in the light of surrounding circum-
stances and the purposes for which it was made." The
liability cannot be extended by implication or otherwise,
beyond the precise terms of the agreement. *Ellis* v. *Em-
manuel*, 1 Ex. Div. 157 (A. D. 1876), and cases therein
reviewed; *McGoveney* v. *The State*, 20 Ohio, 93; *Evans* v.
*Brady*, 17 Wend. 422; *Bank of Steubenville* v. *Carroll's
Admrs.*, 5 Ohio, 214; *Mix* v. *Singleton*, 86 Ill. 194.

And the allowance of compound interest was erroneous.
*Rayner* v. *Bryson*, 29 Md. 480; *Dennis* v. *Dennis*, 15 Md.
73; *Hambleton* v. *Glenn*, 72 Md. 351.

Before one guarantor can claim contribution, he must
show that he has paid more than his share. And appellant
contends that this throws the *burden of proof* on the appel-
lees, to show that payment *actually* was made; and alleges
that they have not done so. It is true that certain *inter-
ledgering* on the books of the Woodberry Manufacturing

Company was done, viz, that the account of William J. Hooper was credited with $41,224.17, and one-half of this amount was debited to the account of each of appellees as ordered by them. No check was given—no cash passed. Thereupon the appellee, James E. Hooper, as treasurer, signed a receipt for $41,224.17, as received from himself and Mr. Theodore Hooper, in payment of "$35,000, with interest from April 15, 1891, to April 2, 1894," guaranteed by themselves and appellant. Now, the Woodberry Manufacturing Company kept no bank account. The funds of the company, appellees say, were deposited in four banks, two of which were in Baltimore City, in the name of Wil-E. Hooper & Sons.

Now the burden is on them to show that this interledgering had exactly the same effect as if these gentlemen had each withdrawn from their respective funds in the hands of the company, $20,612.08, and each paid that amount to an outside party. To do this (1) each must have had to his credit more than that amount; and (2) they must *affirmatively show* that there were funds in hand belonging to said company, sufficient to have allowed such a withdrawal. Appellant contends that they have not done so.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the appellees.

We contend that the debt due by William J. Hooper to the Woodberry Manufacturing Company never was barred, and that consequently there never was a time when appellant could not have been lawfully called upon to pay the same as guarantor. This is clear for the following reasons:

1st. That when he gave the notice of April 15th, 1891, he recognized the amount then due as a valid subsisting debt, for which he was responsible by the terms of the guaranty, and which amount then exceeded $35,000, principal and interest, according to the books of the corporation, and that he acknowledged his liability down to September 18, 1891, when he produced the original guaranty which he then held in his custody as treasurer.

2d. The collection by appellant from time to time, as treasurer of the corporation, from William J. Hooper, of the interest on the account down to and including that paid March 6, 1891, and the payment within three years thereafter of the last item of interest of $779.62, to-wit, February 7, 1894, prevented the bar of the statute from ever attaching. This Court holding that the payment by the principal year by year of interest upon an obligation before the statute has attached will prevent the Statute of Limitations from attaching in favor of the surety. *Ellicott* v. *Nichols*, 7 Gill, 86, 101-104; *Schindel* v. *Gates*, 46 Md. 604, 614-616; *Burgoon* v. *Bixler*, 55 Md. 392.

3d. "The Statute of Limitations does not begin to run against a surety suing a co-surety for contribution until the liability of the surety is ascertained, *i. e.*, until the claim of the principal creditor has been established against him; although at the time of the action for contribution the statute may have run as between the principal creditor and the co-surety." *Davies* v. *Humphreys*, 6 M. & W. 153-169; *Ex parte Snowden*, L. R. 17, Ch. Div. 44; *Wolmershausen* v. *Gullich*, [1893,] 2 Ch. 514-529; *Peaslee* v. *Breed*, 10 N. H. 489; *Bordman* v. *Paige*, 11 N. H. 438; *Wood* v. *Leland*, 1 Metc. 387. The reason of this rule is that "the right to contribution does not arise directly from the original instrument of joint obligation, but from the equity of one who has borne more than his joint share of the joint burden, and this equity having once arisen between co-sureties, neither the creditor, the principal, the Statute of Limitations, nor the death of the party, can take it away." *Camp* v. *Bostwick*, 20 Ohio St. 347; *Martin* v. *Franz*, 127 Pa. St. 389.

4th. Should this Court, however, be of the opinion that the debt was barred as against the appellant at the time the appellees paid it to the Woodberry Co., still this suit is well brought, because, after the passing of the order dismissing our first suit, the appellant sent for his brother William, acknowledged to him his liability and suggested an arrangement by which his one-third might be paid. *Oliver* v. *Gray*

1 H. & G. 204; *Stewart* v. *Garrett,* 63 Md. 392; *Cooper* v. *Alcott,* 1 Ct. App. D. C. 123.

5th. Appellant is estopped from setting up the statute as a bar to this suit, by reason of the position taken by him in his demurrer to our first suit. A party may not take contradictory positions, but is bound by his first election. *R. R. Co.* v. *Howard,* 13 How. 307; *Ry. Co.* v. *McCarthy,* 96 U. S. 267; *Thompson* v. *Howard,* 31 Mich. 309; *Mobberly* v. *Mobberly,* 60 Md. 376; *Edes* v. *Garey,* 46 Md. 41; *Hall* v. *McCann,* 51 Md. 350; *Chacquote* v. *Ortel,* 60 Cal. 601.

Appellant seeks to evade payment of his obligation by pleading that the loans made by the Woodberry Manufacturing Company to William J. Hooper, were *ultra vires.* This defense is all the more lamentable because he was *treasurer* of the corporation at the time the loans were made. His attempt thus to escape payment of his just debt is not worthy of further consideration. A recent decision of this Court conclusively disposes of his contention. *Haacke* v. *Knights of Liberty, &c., Club,* 76 Md. 429.

The evidence conclusively shows that the note of $779.62, given by William J. Hooper, on the 6th of March, 1894, was taken by the corporation *on account of overdue interest,* and that after crediting the same, the full amount paid by the appellees under the guaranty was still due to the corporation by William J. Hooper, it cannot, therefore, be seen where an extension of time was given to the debtor such as would release the appellant as guarantor; in fact, no extension was ever given. The corporation could then, notwithstanding the taking of that note, and could, at all times, have proceeded against the debtor for the balance due after giving credit for the note, and at no time from the giving of the guaranty down to the time of the payment by the appellees, was the corporation prevented from collecting the amount due it, nor was the appellant prevented from paying his obligation to the corporation, and being thereby subrogated to its rights against the appellees and the debtor, had he seen fit so to do.

McSHERRY, J., delivered the opinion of the Court.

To understand the questions raised in the record now before us, it is necessary, at the threshold, to outline briefly the material facts disclosed by the bill, the answer and the evidence.

The late William E. Hooper was possessed at the time of his death, in eighteen hundred and eighty-five, of an undivided one-half interest in certain lands and mill property, and three of his four sons, viz., Theodore, James E. and Alcaeus, were possessed in equal shares of the remaining undivided one-half interest therein; and the father and those three sons were then, and previously had been, carrying on as co-partners, the business of cotton duck manufacturers, under the firm name of William E. Hooper & Sons. The elder Mr. Hooper, by his last will and testament, authorized his executors to unite with the other joint-owners of the mill property in forming a corporation, and in eighteen hundred and eighty-six, a body corporate, known as the Woodberry Manufacturing Company, was duly chartered. One-half of the capital stock of this company was issued to the executors and trustees named in the will of William E. Hooper, in payment for the interest which he, in his lifetime, had held in the mill property, and the other half was issued in equal thirds to the other three joint owners, in payment for their respective interests in the same property. The other son, William J. Hooper, was largely indebted to the firm of William E. Hooper & Sons. His father had guaranteed the payment of that indebtedness to the firm, and after the death of the father, William's debt to the firm was accordingly charged to the father's account, thus making William a debtor to the estate for the amount which he had owed the firm; and when William was credited as against this with his part of his father's estate, it did not extinguish that indebtedness in full, but still left him, as to the surplus, a debtor to the estate. In 1886 William failed in business and conveyed his property to trustees for the benefit of his creditors. In the year

1889 he was indebted to the Woodberry Manufacturing Company, whose stock was held, as just stated, by his father's estate and by his three brothers, and he desired to obtain from that company further advances of money and goods. Accordingly his three brothers, two of whom are the plaintiffs in this case, and one of whom is the defendant, executed and delivered to the Woodberry Manufacturing Company the following guaranty: "Baltimore, April, 1889. In consideration of the sum of five dollars, the receipt whereof is hereby acknowledged, we, Theodore Hooper, James E. Hooper and Alcaeus Hooper, jointly and severally agree to pay on thirty days' notice, to the firm of William E. Hooper & Sons, and to the Woodberry Manufacturing Company of Baltimore County, the latter a body corporate of the State of Maryland, any sum that may now or may hereafter be due said firm and said corporation, not exceeding in the aggregate to both thirty-five thousand dollars, for goods sold and money loaned to William J. Hooper individually or trading as William J. Hooper & Co., each of us reserving to himself the right to withdraw from this agreement by written notice to each of the other signers and to said firm and to said corporation; such notice, however, not to cancel his obligation as to indebtedness existing when it is given." Then follow other provisions which need not be alluded to. The paper was signed by the three promisors named therein. The advances or loans to which this guaranty relates began October the eighth, 1888, and ran through the month of December of that year, and the months of March, April, May, down to June the fourth, 1889, up to which latter date, exclusive of interest, they aggregated $33,800.00. Interest to September the thirtieth, of the same year, amounting to $1,047.77, was added, making the sum total due on that date $34,847.77. On this sum, William J. Hooper paid, in 1890, to the Woodberry Company three instalments of interest, and on March the sixth, 1891, he paid a fourth instalment, which settled the interest in full to February the first, 1891. No further interest was paid by

him till February the seventh, 1894, when he gave his note, payable in six months, for a part of the principal and interest then due, and this was credited on the account as a payment.    During the whole period of time covering these advances to William J. Hooper, and up to July, 1891, the defendant, Alcaeus Hooper, was treasurer of the Woodberry Manufacturing Company.   On April the fifteenth, 1891, Alcaeus Hooper gave notice in writing to the Woodberry Company, to William E. Hooper & Sons, to William J. Hooper and Theodore and James E. Hooper, that he declined " to be responsible for any    *    *    *    *    indebtedness which shall be incurred on and after the date of this notice, under the guaranty of April, 1889, and that he withdrew from said agreement."   On March the twenty-sixth, 1894, the Woodberry Company demanded payment from William J. Hooper of the amount due by him to it, and on the same day requested the three guarantors to pay to it the amount whose payment was jointly and severally guaranteed by them under the agreement of April, 1889.   William J. Hooper made answer that he would be unable to settle during that year, and the evidence shows that such was the fact.   On the day following, the plaintiffs addressed a letter to the defendant advising him that they would, on the second day of the ensuing April, meet this obligation to the Woodberry Company, and requesting him to contribute his share or proportion thereof.   They received no reply, and on the day designated they paid to the Woodberry Company, in the manner which will be explained later on, the sum of $41,224.17, being the amount, including interest, due by William J. Hooper.   On the same day they notified the defendant that they had paid the money and they thereupon made a formal demand on him for contribution.   On the next day, April the third, the plaintiffs filed a bill in equity against the defendant for contribution.   On May the fourteenth, the defendant filed a demurrer to that bill and relied, among other things, upon the fact that the suit had been prematurely brought.   As under the guaranty,

according to his construction of it, no action could be in-
stituted thereon until after the expiration of the thirty days'
notice therein provided for, and as the notice actually given
bore date March the twenty-sixth, the bill filed on April the
second was filed prior to the expiration of the thirty days
from the date of the notice, and therefore was filed prema-
turely.   The Court below, adopting that view, dismissed
the bill without prejudice, on May the twenty-eighth, and
on the next day the bill now before us was filed.   The prayer
of this bill, as it was of the former one, is for a decree compell-
ing the defendant, one of the guarantors, to contribute and
pay to the plaintiffs, the other guarantors, the amount
claimed to be due to them by him on account of the pay-
ment made by them for him, to the Woodberry Company,
of his proportion of the debt covered by the guaranty of
April, 1889.   In his answer he relies on the Statute of
Limitations, and insists that he is not liable after three years
from the date of the guaranty, or at most, not after three
years from the date of the last loan by the Woodberry
Company to William J. Hooper; and he denies that the
plaintiffs have paid any amount under the guaranty at all.

There is no dispute that the guaranty was executed, de-
livered and accepted, or that the Woodberry Company
advanced money and delivered goods to William J. Hooper;
nor is there the slightest pretence that Alcaeus Hooper has
ever paid a single cent to reimburse his brothers any por-
tion of the amount they paid for him under the guaranty.
The defendant seeks to escape all liability to the plaintiffs,
and to avoid a compliance with the obligation which he
deliberately, and with full knowledge of all the facts,
assumed, by now taking refuge behind the plea of the
Statute of Limitations.   Utterly ignoring whatever of equity
there is in the claim which they prefer against him, and
without venturing to go upon the witness stand or to ques-
tion under his oath any allegation of the bill, he repudiates
the liability which has arisen under his explicit and formal
contract; and he repudiates it because more than three

years have elapsed between the date of that contract and the time when these proceedings were begun. It is difficult to conjecture, how, under all the circumstances of this case, a less meritorious defence could have been attempted.

Whilst the undertaking of a guarantor technically differs from that of a surety (*Kramph* v. *Hats*, 52 Pa. St. 525), still the contract of guaranty is the obligation of a surety. *Davis* v. *Wells, Fargo & Co.*, 104 U. S. 159. Both are accessory contracts; that of a surety is in some sense conditional; that of a guarantor is strictly so. A guaranty is a secondary, whilst a suretyship is a primary obligation. A guaranty is a mercantile instrument to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical accuracy, but in furtherance of its spirit and liberally to promote the use and convenience of commercial intercourse. It should be given that effect which will best accord with the intention of the parties as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates, and neither enlarging the words beyond their natural import in favor of the creditor, nor restricting them in aid of the surety. The circumstances accompanying the whole transaction may be looked to in ascertaining the understanding of the parties. *Lee* v. *Dick*, 10 Pet. 482; *Mauran* v. *Bullus*, 16 Pet. 528; *Bell* v. *Bruen*, 1 How. 169; *Davis* v. *Wells, Fargo & Co.*, 104 U. S. 159; *Mussey* v. *Rayner*, 22 Pick. 228. The contract of a surety must have such a construction given to it as will carry out the intention of the parties to it. *Englar* v. *Peoples' Fire Ins. Co.* 46 Md. 333; *McShane & Rogers* v. *Howard Bank*, 73 Md. 135, and the contract of a guarantor ought not to be interpreted by any different rule.

When it is remembered that the three guarantors obviously intended to aid in a substantial manner their less prosperous brother who had but recently before the date of the guaranty assigned his property for the benefit of his creditors and who was, therefore, practically beginning his

business career anew, and when the terms themselves of the guaranty are considered, and the close kinship and intimate business relations existing between all the parties to the transaction are borne in mind, it may be fairly presumed that the intention of all the parties to the instrument was, not that the guarantors should only be liable for three years from the date of the guaranty, or for three years from the date of the last item in the account due to the Woodberry Company, but that they should remain answerable so long as the liability of the principal debtor continued a subsisting, undischarged indebtedness, and that their conditional liability to pay would become a fixed and enforceable obligation as against them as soon as the thirty-days' notice should be given and should expire, if the principal debtor were then unable to pay. There is nothing on the face of the guaranty to indicate that the parties to it contemplated that the money loaned by the Woodberry Company was to be repaid by the debtor within three years from its date; and much less is there a single word or phrase which implies that they understood or designed that their liability was unconditionally and absolutely restricted or confined to that period of time. On the contrary, giving to the instrument a perfectly natural and unstrained construction, it discloses a purpose to continue liable without reference to such a limit, and it, in terms, fixes another period for payment by the guarantors, from which date and no other the Statute of Limitations began to run in their favor. Now, the Statute of Limitations commences running in favor of a surety or guarantor from the time he is liable to suit, and this may or may not be the same time the principal becomes so liable. 1 *Brand. on Suty & Gur.* sec. 143. When, then, were the guarantors, according to the terms of their contract interpreted in the light of all the surrounding circumstances, bound to pay to the Woodberry Company the amount which they jointly and severally promised to pay? Was it on demand? Or, at once, upon the execution and delivery of the paper? Or, in three years thereafter? Or,

at the time the principal debtor was liable to be sued? They jointly and severally agreed "to pay on thirty days notice." That is the period of time fixed in the guaranty.   Until the notice had been given and the thirty days had expired they were obviously not bound to pay.   The notice was a condition precedent to the right of the creditor to sue.   Even a negotiable promissory note payable upon a condition, does not mature until the condition has happened.  3 *Rand. Com. Paper*, sec. 1050 ; and a guaranty whose words are to be taken as strongly against the guarantor as the sense will admit, *Drummond* v. *Prestman*, 12 Wheat. 515, is not, upon principle, subject to a different rule.   The guarantors had the undoubted right to stipulate that their liability should not be enforceable until after the expiration of a designated time, and having incorporated that provision in the contract both they · and the creditor were bound thereby.   The financial condition of William J. Hooper, his large indebtedness to the estate of his father, which he was unable to pay; the fiduciary relations which the guarantors held towards the estate as executors and trustees, and the evident purpose they personally had in view to help their brother by advances, which though made in the name of the Woodberry Company, were largely in point of fact the money of the estate, because the estate was a holder of much of the company's capital stock ; and their intimate knowledge of all the surrounding circumstances give emphasis to the conclusion that they meant by agreeing "to pay on thirty days' notice," to fix that period as the  one when their obligation could be enforced.   That the defendant understood the contract to signify this is put beyond all cavil or controversy by the defence he took and successfully availed of when the first bill in equity was filed against him.   That bill, as we have already stated, was dismissed at his instance solely because, in the language of his demurrer, "neither the Woodberry Manufacturing Company nor the plaintiffs * * * *, claiming by subrogation, had the right to claim and demand anything under the pretended assumpsit or guar-

anty  *   *   *   *   nor to bring any suit therefor until after
the expiration of the period of thirty days from the date of
the service of the notice," given on March the twenty-sixth,
1894. Having asserted in a most formal and unequivocal
manner, this to be the true and correct construction of the
contract, he now repudiates his own interpretation and re-
lies upon a totally variant and inconsistent one. He was
right in the position he took then, and is wrong in the one
he assumes now. The agreement to pay on thirty days
notice is not an agreement to pay before thirty days have
elapsed; nor is it an agreement to pay though no notice be
given; but it is, in legal effect, substantially equivalent to a
promise to pay on demand after a designated date. In all
such instances it has been held that the statute does not
begin to run until the demand has been made. *Rhind* v.
*Hyndman*, 54 Md. 530. As, then, by the terms of the
guaranty the guarantors could not have been required to pay
and could not therefore have been sued for a failure to pay,
until after the expiration of a thirty days' notice, it is per-
fectly manifest that the Statute of Limitations did not begin
to run in their favor before that time, however it might have
affected the principal debtor. The notice was in fact given
on the twenty-sixth day of March, 1894, and expired April
the twenty-fifth, and from the latter date the statute began
to run. The case of *Little* v. *Edwards*, 69 Md. 499, is
clearly distinguishable from this. That case involved a
guaranty given for the guarantor's interest in a judgment
long overdue. It was unconditional and absolute, and suit
could have been brought upon it immediately after it was
given. Because this was so the statute began to run from
its date.

But there is still another view of the subject which com-
pletely disposes of the Statute of Limitations as a defence.
The liability of the guarantor is coextensive with that of
the principal, unless it be expressly limited. 2 *Pars. on
Conts.*, (6th ed.) star page 5; *Richardson* v. *Allen*, 74 Ga.
719. This, of course, is subject to the qualifications aris-

ing out of coverture and infancy, where the guarantor is
held though the principal debtor is not bound at all.    I
*Chitty on Const.* 738, 739.   Now, William J. Hooper's lia-
bility continued, and the debt due by him to the Woodberry
Company was not barred by the Statute of Limitations when
the plaintiffs paid it; and it was consequently not barred at
that time as respects the guarantors.   When the statute has
become a bar to the recovery of a debt, for which several
are jointly and severally liable, the promise of one will not
remove the bar as to the others; but where one of several
so indebted makes a new promise or a payment, either of
interest or of a part of the principal before the bar of the
statute has attached, this will prevent the statute from run-
ning as to the others, even though they be but sureties.
Such promise or payment fixes a new date from which the
statute begins to run.   *Ellicott* v. *Nichols*, 7 Gill, 86;
*Schindel* v. *Gates*, 46 Md. 604; *Burgoon* v. *Bixler*, 55 Md.
392.   William J. Hooper paid on March the sixth, 1891,
the interest due up to February the first of that year, and
on February the seventh, 1894, less than three years after-
wards, he again made a payment by giving his note, which
was accepted and subsequently settled.   On April the sec-
ond, 1894, the plaintiffs, two of the guarantors, paid the
debt to the Woodberry Company.   There was consequently
no point of time from the date of the first item in the
account, October the eighth, 1888, till the second of April,
1894, when the Statute of Limitations had become a bar.
The debt was during all that period enforceable against the
principal debtor, and the liability of the guarantors being
co-extensive with his, was equally unaffected by the statute.
They had it in their power to guard against a liability lasting
so long, had they desired to do so; because it is always com-
petent to a guarantor to limit his liability as to time, amount
or parties by the terms of his contract.   *Merchants' Nat.
B. R.* v. *Hall*, 83 N. Y. 343.   They fixed no limit other
than the one heretofore alluded to, and that cannot avail
the defendant now.   Besides these payments by the prin-

cipal debtor, the plaintiffs, two of the guarantors, who were jointly as well as severally bound with the defendant, continuously recognized and asserted and admitted their liability under the guaranty during the whole period of time covered by it. The debt not having been barred when the plaintiffs paid it, there can be no question of their right to recover contribution from the defendant, because the Statute of Limitations did not begin to run against their demand or claim upon their coguarantor until April the second, 1894. *Bullock* v. *Campbell*, 9 Gill, 182 ; *Davies* v. *Humphries*, 6 M. & W. 153.

Closely allied to the defence we have just considered, is the one of *laches*. Little need be said in regard to it. All of the guarantors knew the financial condition of William J. Hooper when they executed and delivered the guaranty. The record does not disclose that he was at any time during the period covered by the guaranty ever able to pay to the Woodberry Company the amount that he owed it ; nor does it show that when the demand was made, in March, 1894, he was less able to settle than he had been previously. Under these conditions a mere delay in making a demand upon him could not have resulted in an injury 'to the guarantors, because they were placed, by such delay, in no worse position than if demand had been made earlier. Mere prolongation of the time of payment will not discharge a surety or a guarantor. *Benjamin* v. *Hillard*, 23 How. 149, because, as concisely stated by the late MR. JUSTICE MATHEWS in *Davis* v. *Wells, Fargo & Co.*, 104 U. S. 159, " both the *laches* of the plaintiff and the loss of the defendant must concur to constitute a defence." It is therefore incumbent on the party relying on this defence to establish the facts which compose it, and hence he must not only show that there has been an unreasonable delay, but further, that an injury or loss consequent thereon has been sustained by him. Not only has that not been done, but the record contains evidence to the effect that at no time since his assignment, in 1886, has William J. Hooper been in a condition to pay his creditors all that he owed.

We now come to the question respecting the payment by the plaintiffs to the Woodberry Company of the amount for which they and the defendant were responsible under the guaranty. William J. Hooper was indebted to the Woodberry Company. The Woodberry Company was indebted to Theodore Hooper, on April the second, 1894, in a sum amounting to nearly twenty-three thousand dollars, and it was also indebted at the same time to James E. Hooper to an amount exceeding sixty thousand dollars. These sums stood to their credit, respectively, on the books of the company. They could have demanded on that day these amounts in cash. Instead of doing so, they instructed the book-keeper of the company to debit Theodore's account with twenty thousand six hundred and twelve dollars and nine cents, and to debit James E. Hooper's account with the like sum, and the total of these two debits, viz., forty-one thousand two hundred and twenty-four dollars and odd cents, was credited upon William J. Hooper's account. The result of these entries was that William's debt to the Woodberry Company was extinguished to the extent of forty-one thousand two hundred and twenty-four dollars, and the debts of the Woodberry Company to Theodore and to James E. were reduced each twenty thousand and six hundred and twelve dollars. This process as effectually paid the Woodberry Company the amount due to it under the guaranty as though Theodore and James E. had demanded and received from the Woodberry Company checks for forty-one thousand two hundred and twenty-four dollars, and had presented those checks, had them cashed and had then taken the cash and paid it to the Woodberry Company in settlement of William's indebtedness. After these entries had been made, William owed the Woodberry Company nothing on the guaranteed indebtedness, and the Woodberry Company owed Theodore and James each twenty thousand six hundred and twelve dollars less than it had owed them before. Clearly, this transaction resulted in an absolute payment by the plaintiffs of the entire indebtedness covered by the guar-

anty. It was, however, objected that as no cash was in fact used, no payment was in reality made. But it would have been an utterly idle and useless form had checks been drawn and cashed and had the cash been then paid to the Woodberry Company. The money was in bank deposited in the name of William E. Hooper & Sons, in which name the Woodberry Company kept its bank accounts, and could have been drawn out and used, but it would have been redeposited at once, and beyond a few additional entries in the books of the concern, the substantial result would have been ultimately identical. We ought to add that there is nothing in the suggestion that money belonging to the estate of William E. Hooper was included in the sums with which William E. Hooper & Sons were credited in their bank accounts, and on which bank accounts the checks, had they been used at all, would necessarily have been drawn, and the suggestion can be of no avail, because the estate was invariably credited on the books of the Woodberry Company with whatever sums of money were due to it, and the cash itself was all at the disposal of the Woodberry Company for uses of its own.

There is one more question to be considered, and that relates to the appellant's liability to pay to the appellees one-third of the interest paid by them to the Woodberry Company. The sum of forty-one thousand two hundred and twenty-four dollars paid by them includes not only simple but some compound interest. The appellant insists, first, that he is liable, if liable at all, for only one-third of the sum of thirty-five thousand dollars with interest on that one-third from April the second, 1894, the date his co-guarantors paid his share of the obligation for him; and, secondly, that he cannot be held for any compound interest. He is clearly mistaken in assuming that his liability under the guaranty was absolutely limited by the terms of that instrument, to a sum not exceeding thirty-five thousand dollars altogether. The limitation of thirty-five thousand dollars was not a limitation upon the guarantor's ulterior liability to the creditor,

but it was a restriction of the aggregate amount of the loans and advances to be made by the Woodberry Company to William J. Hooper. · For goods sold and money loaned to an amount not exceeding the sum of thirty-five thousand dollars they guaranteed payment to the creditor, but as the guaranty did not provide for an immediate payment, and the guarantors did not contemplate one, it is obvious that their undertaking embraced besides the specified maximum capital sum, the same accessories and consequences (*connexorum et dependentium*) which measured the extent of their principal's liability. *Poth. on Obl.* 404 ; *Curling* v. *Chalkier*, 3 M. & Sel. 502 ; *Benjamin* v. *Hillard*, 23 How. 149. Now, all of the guarantors, including the appellant, who was treasurer of the creditor company when the debt was contracted and the guaranty was given, knew that it was the invariable and uniform practice of the company to charge up interest on all accounts every four months. He knew that interest was an incident, an accessory and a consequence of every debt due to the company; and therefore, that when the limit of thirty-five thousand dollars for loans and sales would be reached, the debtor would be charged upon that sum with interest in the accustomed way. He contracted with reference to that incident or accessory of the principal's debt, and, like the principal debtor, he is accountable for it. With regard to compound interest there is no difficulty. This is not a proceeding to recover compound interest as a penalty for the breach of a fiduciary duty, as in *Ringgold* v. *Ringgold*, 1 Har. & G. 79, and *Diffenderffer* v. *Winder*, 3 G. & J. 311 ; nor does it belong to the group of cases of which *Rayner* v. *Bryson*, 29 Md. 480, and *Dennis* v. *Dennis*, 15 Md. 73, are illustrations ; but it is a proceeding involving the doctrine that where the parties to a transaction amongst themselves, treat accrued interest as an augmentation of the original principal sum, and charge up interest thereon, it is unobjectionable, if subsequent lienors without notice are unaffected thereby. In *Fitzhugh* v. *McPherson*, 3 Gill, 408 our predecessors said : " When interest has once accrued, it

becomes a debt.  There is no longer, therefore, any objection to an agreement *inter partes*, that it shall be considered principal, and therefore carry interest."    S. C. 9 G. & J. 51.   This was affirmed in *Brown* v. *Hardcastle*, 63 Md. 493, and is fully sanctioned by judicial precedent elsewhere. *Eaton et al.* v. *Bell et al.*, 5 B. & Ald. 34 ; *Wilcox* v. *Howland*, 23 Pick. 167 ; *Stokely* v. *Thompson*, 34 Pa. St. 210 ; *Calhoun* v. *Marshall*, 61 Ga. 275; 34 Am. Rep. 101 ; *Vaughn* v. *Kennan*, 38 Ark. 114 ; *Wood* v. *Whisler*, 67 Iowa, 676 ; 5 *Lawson, Rights, Rem. and Pr.*, sec. 2443 ; *Muellor* v. *McGregor*, 28 Oh. St. 265 ; *Taliaferro* v. *King*, 9 Dana. 331 ; *Bledsoe* v. *Nixon*. 69 N. C. 89 ; *Pearce* v. *Hennesy*, 10 R. I. 223 ; *Pearce* v. *Rowe*, 1 N. H. 179 ; *Townsend* v. *Riley*, 46 N. H. 300 ;. 1 *Am. L. Cases*, 4th ed. 533, notes to *Sellock* v. *French*.    That all the parties agree to this compounding admits of no dispute.    Every entry of compound interest made up to July, 1891, was made whilst the defendant was treasurer of the Woodberry Company and whilst he had possession, or at least, control of the books. The plaintiffs have proved the unbroken custom to make such charges, and the defendant has uttered no word of denial.    It is simply incredible that the defendant did not know, and did not fully approve of this course of dealing. He was a party to it throughout.    His failure to testify in the cause must be treated as an admission of his assent thereto ; and his conduct whilst treasurer, in conforming to the uniform custom of making periodical rests, and thus computing interest on interest, not only in respect of this, but with regard to all other accounts, estops him to question its propriety now.

Upon a careful review of the whole record, we have discovered no error whatever, and as a consequence the decree, which required the defendant to make contribution as prayed in the bill, will be affirmed with costs in this Court and in the Court below.

> *Decree affirmed with costs above*
> *and below.*