# SUPERIOR COURT OF BALTIMORE CITY

Filed March 17, 1900.

WILLIAMS, TRUSTEE, ETC.,
VS.
WARNER, ET AL.

*D. G. McIntosh* for plaintiff.
*R. S. Culbreth* for defendants.

HARLAN, J.—

The question raised by the demurrer to the first plea for defense upon equitable grounds is, whether the facts therein alleged are sufficient in law to discharge the defendants from the obligation to pay a mortgage debt of $21,000, which, it is alleged in the first count of the declaration, they had covenanted to pay by an indenture of mortgage, dated February 20th, 1888.

It appears that the defendants, who were mortgagors, paid the mortgage interest up to July 1st, 1893, and on this date, with the assent of the mortgagee, transferred the property mortgaged to a certain corporation, which assumed the mortgage debt.

It is not denied that the effect of this transfer, under the circumstances set out in the plea, was to make the corporation thereafter the principal debtor and the mortgagor's sureties. The plea further alleges that at the time of the transfer it was covenanted between the corporation, the legal and equitable plaintiffs, and the defendants, that the payment of the principal of the mortgage should be extended for three years, it being stipulated, however, as an express condition of said agreement that all interest should be promptly paid as the same became due; that the true intent and purpose of this stipulation was to require of the mortgagee diligence in the collection of the debt in case of default in the payment of interest; that it was in the power of the mortgagee to proceed with diligence, because the *mortgage* contained the usual clause providing that the whole debt should become due upon default, and "it shall be lawful for the said mortgagee * * * to sell said mortgaged premises." That it was the duty of the mortgagee, when the first payment of interest became due and was not made, to foreclose, thereby limiting the liability of the defendants to the amount, if any, shown to be due by them as of that date; that in disregard of this duty the mortgagee did not foreclose, notwithstanding the fact that no interest has been paid by said corporation since the said transfer on July 1, 1893; and the accumulation of interest amounts to over $7,000; that the taxes have also been allowed to accumulate since said date, and whereas

on said date the property was improved by a plant for the manufacture of bricks, valued at $20,000; said plant has since totally disappeared, and the property is now unimproved property, of much less value than when improved as aforesaid.

Do these facts show that the plaintiff has done any act or omitted any duty the legal effect of which is to release the sureties? It is not contended that the agreement to extend the time of payment of the mortgage debt for three years from the date of the transfer discharges the sureties because they were parties to the agreement for the extension, but it is insisted that the allegation "it being stipulated, however, as an express condition of said agreement that all interest on said mortgage debt should be promptly paid as the same became due;" and the further allegation "that the true intent and purpose of said stipulation was to require of the mortgagee diligence in the collection of said mortgage debt in case of any default" taken in connection with the allegation of power in the mortgage to foreclose, bound the creditor to use diligence in collecting the debt in case of a default, or in other words amounted to a stipulation for diligence. No doubt if there is such a stipulation in the contract of suretyship, a breach of the stipulation will discharge the surety. And the sole question on this branch of the case must be whether these allegations show a contractual obligation on the part of the plaintiff to foreclose the mortgage promptly upon default. As to whether the true intent and purpose of the stipulation was to require of the mortgagee diligence in the collection of the mortgage is a question of legal interpretation of the language of the agreement, and not a traversable allegation of fact which is admitted by the demurrer. In my opinion the plea does not show any contract on the part of the plaintiff to use diligence in collecting the mortgage debt. The *mortgagee* had *the right* to foreclose immediately upon any default, but was not *bound* to do so. The want of any such contractual obligation distinguishes this case from the case of Walker vs. Goldsmith, 7 Oregon 161, so earnestly pressed at the argument.

The defense then rests upon the failure of a creditor, who has not contracted with the surety for diligence in collecting from the principal debtor, to use diligence in pursuing his remedies against such principal and the alleged loss that would accrue to the defendants, if they are liable, arising out of the accumulation of over due interest and taxes, and the depreciation in the value of the property, by reason of the "disappearance" of the brick plant.

The plea does not allege any binding agreement on the part of the creditor to give further time to the principal debtor, and at no period after the first payment of interest became due were the sureties, if they desired to expedite payment, deprived of their right either to pay the mortgage debt, and become by substitution entitled to all the remedies possessed by the creditor, including the right to foreclose the mortgage, or to coerce the creditor to proceed by application to a court of equity upon giving the proper indemnity against costs and delay. That such were their rights is settled beyond peradventure:

Scasser vs. Young, 6 G. & J. 243, 248;

Freaner vs. Yingling, 37 Md. 491, 497;

Chelton vs. Brooks. 72 Md. 554, 558;

Gray vs. Farmers' Bank, 81 Md. 631, 642-3.

Having by these rights the power to protect themselves against a loss arising out of a mere delay on the part of the creditor, the same cases establish the doctrine that when the conduct of the creditor amounts to no more than *inactive* or *passive* delay, even though *loss* to the surety has resulted, there is no impairment to the creditor's rights to resort to the surety. In the last case cited, Gray vs. Farmers' Bank, 81 Md. 631, 642-3, Mr. Gray was surety on a note given to the Farmers' Bank by A, which was secured by a mortgage deed of trust of the property of A, and the delay of the bank in effecting a sale of the mortgaged property was relied on, coupled with the loss here set up, "the accumulation of taxes and interest," and "the depreciation" of the property, "by reason of which the proceeds of sale proved insufficient to pay the debt," and the Court of Appeals said: "Stating the proof in its strongest aspect against the bank, its action amounted to no more than inactive or passive delay, and when that is the case, there is no impairment of the creditor's rights to resort to the surety." In the earlier case of Scasser vs. Young, 6 G. & J., 249, the court uses this language: "It is also urged

that loss to the surety occasioned by the order to return the property unsold, is charged and relied on in the bill. But it is not sufficient to allege a loss without imputing it to some act inconsistent with the relations of the parties. Loss may, and often does, occur from delay to prosecute a suit, and from delay to execute after judgment. The surety has the privilege of hastening the creditor to avoid this loss, and if he fails to use his privilege, he comes too late when he asks that the consequences of his neglect shall be visited upon the creditor." And in Freaner vs. Yingling, 37 Md. 499, where the loss was the sale of mortgaged goods, while the creditor stood by, Judge Alvey quotes the language of Ld. Eldon in Eyre vs. Everett. 2 Russ. 381, that "the surety has no right to say that he is discharged from the debt which he has engaged to pay, together with the principal, if all that he rests upon is the passive conduct of the creditor in not suing. He must himself use diligence, and take such effectual means as will enable him to call on the creditor either to sue or to give him the means of suing;" and also the observations of the same learned Chancellor in Wright vs. Simpson, 6 Ves. 734, "that he never understood that as between the creditor and surety there was an obligation of active diligence against the principal. The surety is guarantor, and it is *his* business to see whether the principal pays, and not that of the creditor."

In the case of Taylor et al. vs. State, 73 Md. 208, which was a suit against sureties upon a trustee's bond, a plea for defense upon equitable grounds was put in, as here, in which it was claimed that the sureties had been discharged by the laches and negligence of the cestui que trust, the equitable plaintiff, in allowing the trustee to retain the money in his hands without making any effort to collect it, although his condition was known to her, and a long time suffered to elapse during which the funds were dissipated. A demurrer was sustained by the lower court, and in affirming this ruling the Court of Appeals said: "The creditor is under no obligation to use diligence in pursuing his debtor, and where his failure to do so amounts merely to inaction or passivity this is no defense of which the sureties can avail themselves when sued for his default.

I cannot think the Court of Appeals meant by any language in Hooper vs.

Hooper, 81 Md. 174, to change the rule thus often declared, and which was repeated as heretofore stated in the later case of Gray vs. Farmers' Bank in the same volume at p. 643, that mere inaction or passive delay on the part of the creditor will not discharge the surety, even though accompanied with loss to him.

The Hooper case was a suit by two guarantors to recover contribution from a co-guarantor, and an examination of the record and original briefs will show that the defense of laches was first set up in the defendant's brief in the Court of Appeals, and that the laches relied on was the laches of the co-guarantors, and no reference was made by counsel for either party or by the Court to the Maryland cases hereinbefore referred to. I am of opinion that the demurrer to this plea should be sustained.

The declaration contains a second and third count. The second count is upon the covenant contained in another indenture of mortgage, dated the 28th day of February, 1888, wherein, as alleged, the defendants covenanted to pay the loan of $21,000, which was also secured by the mortgage referred to in the first count of the declaration, as well as a subsequent loan of $2,000, and the breach alleged is this failure to pay either loan.

The third count is upon the covenant contained in the same mortgage, and the breach alleged is to pay the loan of $2,000.

To these two counts the second plea for defense upon equitable grounds is interposed, and it is alleged that there was a mistake of both parties in the execution and delivery of the second mortgage, whereby the property in the second mortgage was subjected to the payment of both loans, instead of the property in the first mortgage, and the property in the second mortgage being subjected to the payment of the second loan.

This plea is certainly not a valid answer to the third count of the declaration, and in my opinion the facts alleged do not constitute a good defense to the second count. There is no attempt here to subject the property which was, as alleged, mistakenly inserted in the mortgage, to the enforcement of the lien. This is an action to enforce a personal liability for debts which are not denied in this count. The making of the covenant is not de-

nied, nor is it alleged that the execution and delivery of it was procured by any fraud or concealment upon the part of the plaintiff. The demurrer to the second plea will also be sustained.