# BALTIMORE CITY COURT.

Filed June 1, 1923.

GEORGE W. PAGE, RECEIVER OF THE LAFAYETTE BANK,

VS.

H. WALTER GANSTER, JR., AND WILLIAM PENROSE.

*Samuel J. Fisher* for plaintiff.

*Edwin T. Dickerson* for defendant Penrose.

*George W. Lindsay* for defendant Ganster.

BOND, CARROLL T., J.—

The transaction out of which the suit arises was carried through on February 19, 1921. On that date Bubert and wife executed a mortgage to William T. Haydon to secure payment of $27,000, "for which principal sum," the mortgage recites, "they have executed and delivered to the

said William T. Haydon their joint and several promissory note, of even date herewith, payable to the order of the said William T. Haydon, in one year after date."

And accordingly a note of the same date was executed by Bubert and wife to Haydon as payee for the principal sum of $27,000, "secured by mortgage of even date herewith," payable one year after date. The note is endorsed by Haydon without recourse and by the bank.

And also, on the 19th day of February, 1921, the defendants Ganster and Penrose signed an agreement of guaranty for the bank in these words:

"Baltimore, Md.,
"February 19, 1921.

"For value received, and at the request of Karl M. Bubert and Nina K. Bubert, his wife, we the undersigned, H. Walter Ganster, Jr., and William Penrose, hereby guarantee the payment of principal of note of Karl M. Bubert and Nina K. Bubert, his wife, dated February 19th, 1921, and payable to the order of the Lafayette Bank one year after date, and secured by mortgage on property Nos. 104 and 106 South Charles street, to William T. Haydon, which mortgage is to be assigned to the said Lafayette Bank, as collateral security therefor, and the liability of the undersigned shall not become due and payable until default in said mortgage, and sale and payment under foreclosure proceedings.

(Signed) H. Walter Ganster, Jr.
(Signed) William Penrose.
Witness, Charles Mulligan."

There was a default under the mortgage, it was foreclosed, the proceeds of this foreclosure of the security failed to yield all the principal sum, and the guarantors are sued for the amount of the unpaid portion. The suit is on the note given with the mortgage.

The first defense to be considered is that upon the variance between the actual mortgage note and the description of it in the contract of guaranty. The note was actually made to Haydon and by him endorsed over to the bank, whereas the guaranty describes the mortgage note guaranteed

as payable to the bank. I conclude that this is a variance of no importance. The guaranty was obviously given to secure the bank on the same mortgage note. It recited that the mortgage was made out to Haydon primarily, to be assigned by him to the bank, and this being the case, the defendants would naturally expect the mortgage note to follow through Mr. Haydon's name, as it did. They intended just such a note, so made up, when they signed the guaranty. On comparison of the three papers—the mortgage, the note, and the guaranty—the identity of the note intended is, however, as obvious as if it had been copied into each other paper without error or omission. Correction of any variance so plainly contrary to intention could always be made in equity. Aetna Indemnity Co. vs. Railway Co., 112 Md. 38. 393. But I think correction is not needed here. See Jones vs. Thayer, 12 Gray (Mass.) 443. M. Penrose, in his testimony in the receivership proceeding, on the petition of the Montrose Building Association, explained his part in the transaction thus:

"All I can say about that is, that was a mortgage that Mr. Ganster had secured for one of his clients from the Maryland Title Company, and he had asked me, as a personal favor to him, to guarantee that mortgage, and subsequently he applied to the Lafayette Bank to take that mortgage up. And he asked me to continue my guarantee. * * * I knew nothing about it until he came to see me and said that the mortgage would be transferred from the Maryland Title Company, I think, to the Lafayette Bank, and would I continue the guarantee to accommodate him."

That explanation would seem to remove from consideration whatever variance there was, if in fact it is correct to say there was any. After all, the note was indirectly made "payable to the bank." Hooper vs. Hooper, 81 Md. 155, 169.

The second ground of defense rests upon the fact that in addition to the mortgage note for one year, there is also a note among the assets of the bank for the same principal sum for four months ending with that year. On this short-term note Bubert alone signed as maker. The explanation subsequently given by the guarantors to the receiver was that, for the advan-

tages in discounting three successive notes for four months each were used instead of the note for the whole year. There is no evidence of payment or retirement of the original mortgage note; that note, too, remained apparently outstanding, in the possession of the bank.

Counsel for Mr. Ganster concedes that he knew and participated in the "financing" with the short-term notes and that nothing in these steps relieves him from a verdict on his guaranty. As to Mr. Penrose, however, there is a dispute. His counsel treats the guaranty as one strictly on a specified promissory note, and argues that any change in the note, as described in the evidence, or abandonment of it, must release the guarantor. Counsel for the receiver, on the other hand, urges that Mr. Penrose's real intention, as he stated it in evidence, was to guarantee the mortgage debt, and that from this fact alone it follows that any variation in the form of notes evidencing that debt would be immaterial, so long as the debt was not extended or otherwise varied to the possible disadvantage of the guarantor.

On the evidence here, the only effect of the giving of the extra note seems to have been a doubling of the evidences of debt. I do not see how we can say that the obligation guaranteed even if we look no further than the first note, and take it to be an obligation on that paper, was in any way affected by the execution and use of the short-time notes. The transaction was carried through informally, and apparently without effort to follow any definite legal theory; there was no payment or release of the first note, no extension of time. In Maryland the Courts have consistently followed what is described as the modern rule (22 L. R. A. n. s. 713), which attaches no importance to immaterial, unprejudicial alterations. Cases cited by counsel, Dixon vs. Spencer, 59 Md. 246, and others. Here I do not see that we can say there was an alteration of the guaranteed obligation. In addition to the cases cited in argument, I would refer to

Gottsegan Cigar Co. vs. Levy, 42 Utah 266, and Ann. Cas. 1916 A. 1189 and note.

Mercantile Trust Co. vs. Donk, 178 S. W. 113.

Scarboro vs. Kalmon, 13 G. App. 28.

Foster Co. vs. Hester, 18 N. D. 135.

Gansevoort Bank vs. Empire State Co., 123 App. Div. (N. Y.) 331.

Sampson Co. vs. Commonwealth, 202 Mass. 326, 338.

Guaranty Co. vs. Pressed Brick Co., 191 U. S. 416.

Furthermore, it appears on the evidence that in this case the guarantor was fully cognizant of all the steps taken and not until coming to the trial table was it suggested on his behalf that the principal obligation had been altered to his prejudice.

The failure of the receiver to institute suit for foreclosure of the mortgage until four months after his appointment, and the consequent failure to secure the rentals for the intervening four months to add to the amount realized from the securities, does not entitle the guarantors to have the amount of those rentals added in as if realized, and so to have a deduction of that amount from the excess covered by the guaranty. The creditor is under no obligation to the guarantor to proceed against the security with diligence.

Berman vs. Elm Loan Assn., 114 Md. 191.

Warner vs. William, 93 Md. 517, 521.

Gray vs. Farmers' Bank, 81 Md. 631, 643.

Notice of default by the creditor to the guarantor on such a contract is not required (Heyman vs. Dooley, 77 Md. 162, 166).

The defendants urge that their guaranty was one for payment of the principal of the debt only, and that the amount realized on the foreclosure of the mortgage should be deducted from that principal alone, to the exclusion of accumulated interest, in calculating the unrealized excess covered by the guaranty. I do not see anything in the contract of guaranty which so limits the application of the amount realized on foreclosures. In the absence of agreement the creditor could apply the proceeds first to the payment of the unsecured portion of the debt. And I conclude that the guarantors are not entitled to have the excess of principal debt calculated without having taxes and foreclosure expenses first charged against the purchase money at foreclosure sale. It seems to me clear that we cannot say anything is realized by the creditor from the security until af-

ter the expenses of foreclosure and all charges have been paid.

For these reasons the verdict is entered for the plaintiff for the full amount claimed.